710 So.2d 799 (1998)
Meredith E. EICHER
v.
LOUISIANA STATE POLICE, RIVERBOAT GAMING ENFORCEMENT DIVISION.
No. 97 CA 0121.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
Writ Denied May 8, 1998.
*801 Richard P. Ieyoub, Robert B. Barbor, Thomas A. Warner, III, Jenifer Schaye, Office of the Attorney General, Baton Rouge, for Defendants-Appellants, Louisiana Gaming Control Board and Louisiana State Police, Riverboat Gaming Enforcement Division.
Hillar C. Moore, III, Andrew J. Hodges, IV, Baton Rouge, for Plaintiff-Appellee, Meredith E. Eicher.
Before GONZALES, PARRO and GUIDRY, JJ.
PARRO, Judge.
The Louisiana State Police, Riverboat Gaming Enforcement Division ("the Division") revoked a temporary permit it had granted to Meredith Eicher ("Ms.Eicher") which allowed her to work as a gaming employee at a riverboat casino. She appealed the revocation through an administrative process that upheld the decision. Eventually, Ms. Eicher petitioned for judicial review in the district court, where the decision was affirmed by the court. After granting a motion for a new trial, the court reversed its initial judgment and ordered the Division to reinstate Ms. Eicher's permit. The Division appeals this judgment. We reverse and render.

FACTUAL AND PROCEDURAL HISTORY
The facts of this matter are uncontested. In May 1990, in connection with the highly publicized failure of Champion Insurance Company, Ms. Eicher pled guilty to two counts of aiding and abetting mail fraud, a federal felony offense. She was sentenced to pay a fine of $5000, to serve five months imprisonment, and upon release, to be on supervised probation for two years. In May 1991, based on the same occurrences which led to her conviction on the federal charges, she pled guilty in state court to two counts of accessory after the fact to forgery. She was sentenced to one year of imprisonment at hard labor, which was suspended, and she was placed on probation, to be served concurrently with the federal probation under the supervision of the federal probation office. She fulfilled all the conditions of her sentences and in May 1993, her state convictions were set aside and the prosecutions dismissed, pursuant to LSA-C.Cr.P. art. 893(E).[1]
During the summer of 1994, Ms. Eicher participated in six to eight weeks of casino dealer school at the Belle of Baton Rouge casino. She completed the dealer training ranked in the upper quadrant of her class and in August 1994, completed a gaming employee permit application. On the application, she listed all of the federal and state convictions and wrote "expungement/dismissal" in brackets to the right of these offenses. She also listed an Alabama charge of theft and showed this was "never prosecuted  charges formally dismissed." Another set of brackets suggested all three charges "arose out of same offense."
On September 11, 1994, the Louisiana State Police conducted a registration day to review the gaming permit applications and interview prospective casino employees under oath. Because Ms. Eicher's application indicated she had a criminal record, she was directed to a special table to provide additional information. Trooper Adam White, who interviewed her, was familiar with her case because he had been involved in her initial arrest. She offered him copies of both plea agreements, as well as other documents she had brought, which showed the nature and disposition of the federal and state convictions. But Trooper White just took notes concerning their conversation and did not examine her documents or make copies of them. At the conclusion of this process, Ms. Eicher signed a conditional approval agreement and was granted a temporary work permit. The conditional approval agreement acknowledged that the work permit was conditioned upon a personal background investigation by the Louisiana State Police, at the *802 conclusion of which, the work permit application could be rejected.
On the basis of her temporary work permit, Ms. Eicher began working at the Belle of Baton Rouge. Several days after the casino opened, a local television station broadcast a story criticizing the riverboat casino and the Louisiana State Police for allowing Ms. Eicher, a known convicted felon, to work as a craps dealer. After this story aired, two state troopers approached her at work and pulled her temporary work permit because of her felony convictions, pending further investigation. She was later sent a "Notice of Denial," stating her temporary permit was revoked and no permanent license would be issued to her because she had been convicted of a felony offense and because she had made an omission or misstatement of fact on her application.
At Ms. Eicher's request, an administrative hearing was held to consider her appeal of this decision. On the basis of the testimony and documentary evidence presented at that hearing, the hearing officer found she had not misrepresented the facts concerning her criminal record on her application. However, he upheld the denial of her work permit on the basis that her criminal convictions disqualified her for employment in the gaming industry. On appeal to the Louisiana Riverboat Gaming Commission ("the Commission"), the decision was upheld, and Ms. Eicher filed a petition for judicial review in the Nineteenth Judicial District Court.
The district court judge reviewed the record of the administrative proceedings and briefs submitted by the parties. After hearing oral arguments, the court affirmed the decision of the Commission. Ms. Eicher filed a motion for new trial, which was granted by the court in a hearing on September 30, 1996. During that hearing, the court reversed its prior judgment and ruled that, under the facts of this case, the Commission and Division should be estopped from revoking Ms. Eicher's work permit. The judgment directed the reinstatement of her permit. The Division and the Commission's successor, the Louisiana Gaming Control Board, filed this suspensive appeal.[2]

STANDARD OF REVIEW
Any person whose application for a gaming permit has been denied by the Division may appeal to the Commission. LSA-R.S. 27:88(A).[3] A person adversely affected by a decision of the Commission may appeal to the Nineteenth Judicial District Court in accordance with the provisions of the Administrative Procedure Act. LSA-R.S. 27:89.[4] The Administrative Procedure Act specifies that judicial review shall be confined to the record, as developed in the administrative proceedings. LSA-R.S. 49:964(F). The district court may reverse or modify the agency decision if substantial rights of the appellant are prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or an abuse of discretion; or (6) manifestly erroneous. LSA-R.S. 49:964(G); Pacificorp Capital, Inc. v. State, Through Div. of Admin., 92-1729 (La.App. 1st Cir. 8/11/94), 647 So.2d 1122, 1125, writ denied, 94-2315 (La.11/18/94), 646 So.2d 387. The manifest error test is used in reviewing the facts as found by the administrative *803 tribunal; the arbitrary and capricious test is used in reviewing the administrative tribunal's conclusions and its exercise of discretion. Save Ourselves, Inc. v. La. Envtl. Control Comm'n, 452 So.2d 1152, 1159 (La. 1984). On legal issues, the reviewing court gives no special weight to the findings of the administrative tribunal, but conducts a de novo review of questions of law and renders judgment on the record. State, Through Louisiana Riverboat Gaming Comm'n v. Louisiana State Police Riverboat Gaming Enforcement Div., 95-2355 (La.App. 1st Cir. 8/21/96), 694 So.2d 316, 319.

ANALYSIS

New Trial or Rehearing
The Division argues that the district court had insufficient grounds to grant the motion for new trial, and therefore the court's initial judgment, which affirmed the Commission, should be reinstated. When reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court.[5]See LSA-R.S. 49:964; Liberty Mut. Ins. Co. v. Louisiana Ins. Rating Comm'n, 96-0793 (La.App. 1st Cir. 2/14/97), 696 So.2d 1021, 1028 n. 7; Jordan v. City of Baton Rouge, 93-2125 (La. App. 1st Cir. 3/10/95), 652 So.2d 701, 703. Accordingly, an application for new trial in this circumstance can be analogized to an application for a rehearing in the appellate court, pursuant to Article 2166 of the Louisiana Code of Civil Procedure. The purpose of allowing an application for rehearing is to afford to litigants, whose rights and interests are affected by the judgment, an opportunity to have an erroneous judgment corrected by the court deciding it. State v. Standard Oil Co. of Louisiana, 188 La. 978, 178 So. 601, 626 (1938) (on rehearing). The evaluation of whether to grant such a rehearing is solely within the discretion of the court. A district court has similar discretion to grant a new trial for any good grounds, and must grant a new trial if its judgment appears clearly contrary to the law and the evidence. LSA-C.C.P. arts. 1972 and 1973.
In Ms. Eicher's case, the motion for new trial did not request a "new trial," in the sense of the district court re-trying the case, which is clearly impermissible under LSA-R.S. 49:964(F). Rather, the motion functioned as a motion for rehearing, in that it urged the court to exercise its discretion and reconsider the merits of its own previous ruling. Upon considering the briefs submitted with the motion, the court apparently felt its initial judgment was legally incorrect or that it would result in a miscarriage of justice under the facts presented. Obviously, since the court reversed its original judgment, it considered there were good grounds for granting the rehearing and re-examining its earlier decision. This decision by the court to grant a rehearing did not constitute an abuse of discretion.

Estoppel
In oral reasons for judgment, the district court explained its decision to reverse the initial judgment on the basis of estoppel, stating:
The thing that really bothers the court about this whole thing is the facts of this case. It's the way the thing was handled at the outset. I don't know why she ever received the temporary permit to begin with. If in fact they had this problem, then why didn't they go review it and decide if they were going to issue licenses to people or not issue licenses to them. Instead they issued the license knowing full well about her situation because they had the same trooper there.... I will go ahead and rule. I think that based on the specific facts of this case, ... the Division should be estopped from revoking the license.... I think the key to this thing is that at the time the state had before it the information that it needed.... [T]o issue the permit at that point and then come *804 back and yank it later, they should be estopped from doing that.
All of the parties involved in this appeal have acknowledged that the district court's decision to base its judgment on the grounds of estoppel may not have been legally sound, and we agree it was not. Article 1967 of the Louisiana Civil Code states, in pertinent part:
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise.
Before the effective date of Article 1967 in 1985, the Louisiana Supreme Court had recognized three elements required for application of detrimental reliance or equitable estoppel as: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance. See Morris v. Friedman, 94-2808 (La.11/27/95), 663 So.2d 19, 25, and cases cited therein. The supreme court has also noted that estoppel is not favored in our law, and properly applies only as to representations of fact. Morris, 663 So.2d at 25; State v. Mitchell, 337 So.2d 1186, 1188 (La.1976). The representation required for the application of equitable estoppel is usually characterized as a "misrepresentation," which generally implies intent and suggests deliberate falsification. Hammons v. ABB C-E Services, Inc., 94-2444 (La.App. 1st Cir. 10/6/95), 671 So.2d 370, 377 (Shortess, J., concurring). A misrepresentation of law does not generally invoke equitable estoppel. Quality Finance Co. v. Mitchell, 423 So.2d 1262, 1266 (La.App. 1st Cir. 1982). It has also been suggested that when invoking the doctrine against a governmental agency, a somewhat greater burden may be appropriate. Such a case would involve (1) unequivocal advice from an unusually authoritative source; (2) reasonable reliance on that advice by an individual; (3) extreme harm resulting from that reliance; and (4) gross injustice to the individual in the absence of judicial estoppel. See Gulf States Utilities Co. v. Louisiana Pub. Serv. Comm'n, 92-1185 (La.3/17/94), 633 So.2d 1258, 1266 (Dennis, J., concurring).
The factual situation before this court simply does not justify application of estoppel, and the district court's reliance on this principle in this case was legal error. Any misunderstanding that occurred in this case concerned the proper application of the law; there was no misrepresentation of fact. Ms. Eicher was aware from the outset that, because of her felony convictions, the law might preclude her employment in the gaming industry. She testified that she telephoned the Division before taking the dealer's classes to explain her situation and find out if she had any chance of being hired, and was told by someone who answered the phone that each application would be considered on its own merits. This does not constitute unequivocal advice from an unusually authoritative source, and any reliance she may have placed on this statement was not justified. Further, when she submitted her application and was approved for a temporary permit, its conditional nature was clearly spelled out in the agreement which she read and signed. Finally, even if the district court was correct in suggesting that the temporary permit should never have been granted, the failure of public officers to correctly enforce statutory provisions should not be permitted to inhibit correct administration of the law or be construed to estop more diligent enforcement. See State v. Exxon Corp., 95-2501 (La.App. 1st Cir. 6/28/96), 676 So.2d 783, 787. Accordingly, the district court erred in ordering the Division to reinstate Ms. Eicher's work permit on the basis of estoppel.

Effect of Constitutional and Statutory First Offender Pardons
The hearing officer found Ms. Eicher did not make any misleading statements about her criminal convictions on her application, so the Division's revocation of her temporary work permit on this basis was inappropriate. The record fully supports the factual finding that Ms. Eicher was completely forthcoming with information and documentary evidence concerning her criminal record. Further, *805 based on the entire administrative record, we find no manifest error in this finding.
However, the hearing officer affirmed the Division's decision to revoke Ms. Eicher's temporary work permit and to deny her application for a permanent gaming employee permit because Ms. Eicher had criminal convictions. In written conclusions of law, he reviewed the applicable constitutional and statutory provisions having a bearing on these facts. The Division's decision to revoke Ms. Eicher's license was based on LSA-R.S. 27:76, which provides, in pertinent part:
The division shall not award a license or permit to any person who is disqualified on the basis of any of the following criteria:
....
(3) The conviction of or a plea of guilty or nolo contendere by the applicant, or of any person required to be qualified under this Chapter as a condition of a license, for an offense punishable by imprisonment of more than one year.[6]
This statute, which was first enacted and became effective in 1991, stands in apparent contradiction to earlier legislation, found in LSA-R.S. 37:2950, which states, in pertinent part:
A. Notwithstanding any other provisions of law to the contrary, a person shall not be disqualified, or held ineligible to practice or engage in any trade, occupation, or profession for which a license, permit or certificate is required to be issued by the state of Louisiana or any of its agencies or political subdivisions, solely because of a prior criminal record, except in cases in which the applicant has been convicted of a felony, and such conviction directly relates to the position of employment sought, or to the specific occupation, trade or profession for which the license, permit or certificate is sought.
In subsequent paragraphs, this statute indicates that if an agency decides to prohibit an applicant from engaging in an occupation because of a prior criminal conviction, that decision must be in writing and may be appealed under the provisions of the Administrative Procedure Act. LSA-R.S. 37:2950(B) and (C). A number of agencies are excepted from the provisions of this statute, including "any law enforcement agency," but the Louisiana Gaming Control Board and its predecessor, the Commission, are not specifically named as entities to which the statute is inapplicable. LSA-R.S. 37:2950(D)(1).[7] Ms. Eicher argues that if the legislature had wished, it could have excepted the Louisiana Gaming Control Board from the application of this statute, and its failure to do so requires the court to enforce this statute in favor of Ms. Eicher, rather than enforcing the provisions of LSA-R.S. 27:76(3) against her position.
In reaching his decision reconciling the apparent contradictions in these two statutes, the hearing officer stated:
[LSA-R.S.] 37:2950 cannot be read to prohibit the division from barring the employment of persons with certain convictions, namely those which are punishable by imprisonment of more than one year. To do so would render ineffective the later expression of the legislature in its clearly stated purpose of imposing strict controls on the legitimate gaming industry. The clear language of [LSA-R.S. 27:76(3)] not only permits, it requires division agents to reject applicants who have such a criminal record.
We agree with the hearing officer's interpretation and application of the two statutes in this case. The legislative branch is presumed to intend to achieve a consistent body of law. When the legislature enacts a statute without mentioning existing statutes on the same subject matter, the later act may, by *806 necessary implication, effect the repeal of the former law. State v. Piazza, 596 So.2d 817, 819 (La.1992). However, there is a presumption against implied repeal, based on the theory that the legislature envisions the whole body of law when it enacts new legislation. Therefore, the court should give harmonious effect to all acts on a subject when reasonably possible. Id. It is only when two acts are clearly irreconcilable and so inconsistent that the two cannot have concurrent operation, that the presumption against implied repeal falls, and the later statute governs. Id.; LSA-C.C. art. 8.
The conclusion of the hearing officer in this case gives effect to the later expression of legislative intent in LSA-R.S. 27:76(3), without abrogating the provisions of LSA-R.S. 37:2950. Accordingly, we find no legal error in this interpretation of the law and no abuse of discretion on the part of the Division in its application of this statute to Ms. Eicher.[8]
Our inquiry does not end there, however. As the hearing officer also noted, there are Louisiana constitutional provisions which have a bearing on this case. Article I, Section 20 of our constitution states, in part, that full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense. Additionally, Article IV, Section 5(E)(1) states:
The governor may grant reprieves to persons convicted of offenses against the state and, upon recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor. (footnote omitted).
In addition to these constitutional provisions, for first offense non-capital felonies, LSA-C.Cr.P. art. 893(D)(2) provides, in pertinent part:
Upon motion of the defendant, if the court finds at the conclusion of the probationary period that the probation of the defendant has been satisfactory, the court may set the conviction aside and dismiss the prosecution. The dismissal of the prosecution shall have the same effect as acquittal, except that the conviction may be considered as a first offense and provide the basis for subsequent prosecution of the party as a multiple offender, and further shall be considered as a first offense for purposes of any other law or laws relating to cumulation of offenses.
Ms. Eicher pled guilty to federal and state felony charges and completed her sentences on both. She did not obtain a governor's pardon,[9] but at the conclusion of her probationary period on the state conviction, the court granted her request to set her conviction aside and dismiss the prosecution on the state offense, pursuant to Article 893. Ms. Eicher argues that, because of this dismissal and set aside, her state felony conviction ceased to exist for purposes of the permitting qualification process. Although, short of a presidential pardon, there is no comparable provision which would dismiss or pardon the federal felony conviction, Ms. Eicher contends the constitutional provisions have the effect of restoring to her all state citizenship rights.
The hearing officer considered the relationship of the constitutional provisions and made the following determination:
The effect of the first offenders (sic) pardon has been the subject of debate, critical review, and more importantly, analysis by the Louisiana Supreme Court. The Court has distinguished the effects of [the] two aforementioned Louisiana Constitutional provisions and held that the effects of an automatic pardon may *807 be limited by the legislature. See State v. Wiggins, 432 So.2d 234 (La.1983). In Wiggins the Court held that certain rights of citizenship may be restricted by the state.
A gaming permit is not a right of citizenship. The legislature specifically provided in [LSA-R.S.] 4:502(B) in pertinent part that a gaming permit is ... "a pure and absolute [revocable] privilege and not a right, property or otherwise, under the constitutions (sic) of the United States or of the state of Louisiana."[10]
We find no error in this analysis of the law.[11] In the Wiggins case, the right to keep and bear arms, distinctly guaranteed by the United States and Louisiana Constitutions, was implicated. U.S. Const. amend. II; LSA-Const. art. I, § 11. The statute at issue prohibited any person who had been convicted of certain violent crimes from possessing a firearm or carrying a concealed weapon for ten years after completion of his or her sentence, probation, parole, or suspension of sentence. LSA-R.S. 14:95.1. In upholding this statute against a first felony offender who had been automatically pardoned under LSA-Const. art. IV, § 5(E)(1), the Louisiana Supreme Court stated, "Surely, the legislature has the authority under its police power to limit the `rights of citizenship' restored by an automatic pardon...." Wiggins, 432 So.2d at 237. We agree with the hearing officer's determination that if such a right of citizenship can be legislatively limited, even for persons whose convictions are pardoned under the Louisiana Constitution, then certainly a privilege, such as a gaming employee permit, can also be limited by legislation. There was no legal error in the hearing officer's conclusion that the Division acted properly when it revoked the temporary permit it had issued to Ms. Eicher and determined that she was ineligible for a permanent gaming employee permit.

CONCLUSION
Accordingly, we reverse the district court's judgment. Further, because we find no manifest error in the hearing officer's factual findings and no legal error in his application of the law, his decision must be, and is hereby, affirmed. All costs of this appeal are assessed against Ms. Eicher.
REVERSED AND RENDERED.
NOTES
[1] Article 893 has been amended several times since Ms. Eicher's conviction was set aside; the provisions which authorize the set aside of state convictions are currently contained in LSA-C.Cr.P. art. 893(D)(2). Any further reference to this provision in this opinion will be to its current designation.
[2] By Act 7 of the First Extraordinary Session of 1996, the Louisiana legislature enacted the provisions of LSA-R.S. 27:1 et seq., effective May 1, 1996, which established the Louisiana Gaming Control Board as the successor to the Louisiana Riverboat Gaming Commission. LSA-R.S. 27:11 and 31(A)(1). The Act further provided that the Department of Public Safety and Corrections, office of state police, was to continue its investigative and enforcement duties for the Gaming Control Board, LSA-R.S. 27:20, and that the Attorney General or his designee was to represent the Gaming Control Board and the office of state police relative to all gaming matters in all legal proceedings. LSA-R.S. 27:19. The Gaming Control Board was automatically substituted without the necessity for amendment in any pending legal matters. LSA-R.S. 27:31(C).
[3] When Ms. Eicher's permit was revoked, this provision authorizing an administrative hearing was designated as LSA-R.S. 4:547. It was re-designated as LSA-R.S. 27:88 in the First Extraordinary Session of 1996.
[4] This provision was formerly designated as LSA-R.S. 4:548.
[5] Further, an aggrieved party may obtain review of any final judgment of the district court by appeal to the appropriate court of appeal. LSA-R.S. 49:965. On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. See LSA-Const. art. V, § 5(C); Donnell v. Gray, 215 La. 497, 41 So.2d 66, 67 (1949).
[6] Before May 1, 1996, this provision was designated as LSA-R.S. 4:536 and the hearing officer's decision refers to it as such. However, in this opinion, we will refer to this statute by its current designation.
[7] However, although none of the parties have mentioned it, we note that the permit in question, being one for a "non-key gaming employee," is issued by a law enforcement agency, the Department of Public Safety and Corrections, office of state police. LSA-R.S. 27:20(A)(1)(d)(i). Accordingly, the provisions of LSA-R.S. 37:2950 may not apply to this situation.
[8] The fact that the Division is a law enforcement agency, and therefore exempt from this statute, further supports this conclusion.
[9] Ms. Eicher applied for a governor's pardon, but was advised that insufficient time had elapsed since the completion of her sentence and probation and she was not yet eligible for such a pardon.
[10] The current designation for LSA-R.S. 4:502(B) is LSA-R.S. 27:42(B).
[11] However, we do take issue with the hearing officer's citation of State v. Adams, 355 So.2d 917 (La.1978), for the proposition that a first offender's pardon does not automatically restore privileges, as opposed to and distinguished from rights. That case specifically noted that the "pardon" under LSA-Const. art. IV, § 5(E)(1) restores privileges as well as rights, such as the privilege of holding a liquor license. Id. at 922. However, under the later Wiggins case, the legislature's power to limit even "rights" of citizenship was recognized. The hearing officer correctly rationalized that if such basic rights of citizenship can be legislatively affected, privileges can also be limited.