752 So.2d 390 (2000)
SHOWBOAT STAR PARTNERSHIP, Showboat of Louisiana, Inc. and Lake Pontchartrain Showboat, Inc.
v.
Ralph SLAUGHTER, Secretary of the Department of Revenue and Taxation, State of Louisiana.
No. 98CA2882.
Court of Appeal of Louisiana, First Circuit.
February 18, 2000.
Rehearing Denied March 30, 2000.
L. Eades Hogue and Neal J. Favret, New Orleans, for Plaintiff-Appellee.
Geneva Landrum, Roger Broussard, R. Frederick Mulhearn, and Shanda J. McClain, Baton Rouge, for Defendant-Appellant.
Before: SHORTESS, C.J., PARRO and KUHN, JJ.
SHORTESS, C.J.
In 1991 the United States Internal Revenue Service and the Louisiana Department of Revenue and Taxation (Department) formed a Joint Gaming Task Force. The purpose of this Task Force was to *391 study the new gaming industry that would be created in Louisiana, and to identify tax issues relevant to the industry in order to educate and assist members of the industry with tax matters.
On November 8, 1993, Showboat Star Partnership commenced operating a river-boat-gaming facility on Lake Pontchar-train in New Orleans, Louisiana. Show-boat took title to a newly constructed gaming vessel, and on that same date various items were installed in the vessel, including illuminated signs, surveillance equipment, currency conveyor systems, cabinets, slot machines, roulette tables, and other related gaming equipment.
Earlier, on August 3, 1993, Showboat representatives met with Task Force representatives. During the course of this meeting, two members of the Task Force, who were employees of the Department, informed Showboat that certain equipment, including certain items considered component parts of the vessel under Louisiana Revised Statute 47:305.1(A), would qualify for the Louisiana sales-and-use-tax exemption. They were told that the exempt equipment included gaming devices and other items, which were to be purchased and installed into the riverboat. In addition, the members of the Task Force provided Showboat with a sales tax exemption form. Showboat was advised to present the form to equipment vendors at the time of purchase so that state sales-and-use taxes would not be imposed.
In 1995, the Department audited Showboat for the period of January 1, 1993, through December 31, 1994. On May 16, 1995, the Department issued a Notice of Proposed Assessment (Notice) advising Showboat that it proposed assessing $263,211.60 in state sales-and-use tax, plus interest of $66,265.60. The Notice included sales-and-use taxes on the gaming equipment and other installed devices.
On May 31, 1995, Showboat filed a letter of protest with the Department with respect to the Notice. On June 5, 1995, the Department responded to Showboat's protest, affirming its position that the gaming equipment would not be subject to the exemption afforded under Revised Statute 47:305.1(A) for equipment that "enter into and become component parts" of vessels.[1] On June 23, 1995, Showboat paid $278,628.12 under protest, representing the adjusted sales-and-use taxes associated with the purchase of the gaming equipment, together with interest through June 23, 1995.
On July 21, 1995, Showboat Star Partnership, Showboat of Louisiana, Inc. and Lake Pontchartrain Showboat, Inc. (plaintiff)[2] filed a petition for refund of taxes paid under protest against Ralph Slaughter, Secretary of the Department of Revenue and Taxation (defendant). After a trial on the matter, the court ruled that "the gaming equipment, including the signs and surveillance equipment, is not a component part of the Showboat Star vessel for purposes of Revised Statute 47:305.1(A)." The court, however, found defendant was estopped from collecting tax on the gaming equipment, signs, and surveillance equipment from plaintiff because of representations made to and relied upon by plaintiff. The court ordered defendant to repay plaintiff the amount of taxes and interest paid under protest, together with interest from the date of judicial demand. Defendant appeals.

DID THE TRIAL COURT ERR IN APPLYING EQUITABLE ESTOPPEL IN THIS CASE?
Defendant contends the trial court erred in finding it was estopped from demanding *392 payment from plaintiff for the taxes and interest due. Defendant further maintains the court erred in ordering it to return the taxes and interest plaintiff paid under protest.
Defendant cites St. Pierre's Fabrication & Welding v. McNamara,[3] where the rule of law was established that the state is not estopped from collecting taxes simply because erroneous statements were made by an agent of the state. This case and other previous cases held that where the language of the statute is clear and unambiguous as applied to the taxpayer, defendant is not estopped from collecting taxes.[4]
In St. Pierre's, the plaintiff was a corporation engaged in contracting, fabricating, and providing welding services and equipment. The company also manufactured for sale a metal product, which was sold mostly to an oil company. There was testimony the company was selling items subject to the state's general-sales tax and had been charging tax on these items as required. An application was submitted by the plaintiff in that case to defendant for a Sales Tax Certificate. There was a line on the application form that asked "Reason for Applying," and plaintiff wrote, "Started selling taxable items." On another line the plaintiff described the nature of its business activities as sales of metal.
In response to this application, plaintiff received a letter from the Department stating it was not liable for state sales tax. The Department employee testified that she must have overlooked the response on the form that plaintiff was selling taxable items. Because the statute was clear and unambiguous, the supreme court found that the Department was not estopped from collecting the tax and interest. However, the court found there was substantial evidence that plaintiff was in good faith in not paying the tax and reversed the assessment of a penalty.
In St. Pierre's, the court examined Claiborne Sales Co. v. Collector of Revenue.[5] In Claiborne, the plaintiff was engaged in the business of selling ceramic tile and tile accessories to contractors. The plaintiff contended the sales it made to contractors were wholesale transactions. Thus, they were not liable for state sales taxes. The plaintiff further alleged that it had twice applied to the deputy collector for a dealer's registration. Its request was refused on both occasions, and it was told it was not liable for the tax. The plaintiff did not present any evidence of these attempted applications, nor did any agent of the tax collector testify who told plaintiff it was not liable for the tax. However, the court found that given the clear language of the statute, plaintiff was not a wholesaler and estoppel did not apply.
In this case, the new industry of gaming was coming into the state. In order to prepare for all the new tax issues, the state helped form a joint federal and state task force to study this industry. The Task Force's purpose was to educate and assist members of this new industry with tax matters. On June 16, 1993, Barbara Roe, defendant's senior agent in the research and technical services division, whose position was to inform other divisions of defendant's position regarding the applicability of exemptions, composed a memorandum to John McShane, an audit manager. The memo stated, "All original purchases of equipment to outfit the vessels including the gambling machines would also be eligible for the exemption provided under [R.S. 47:305.1(A) ]."[6] On *393 August 3, 1993, plaintiffs representatives had a meeting with members of the Task Force. Two of defendant's employees, Earl Millet, the Regional Tax Director of the New Orleans Regional Service Center, and John McShane, the person to whom the above memo was directed, were members of the Task Force. At that meeting Millet and McShane told plaintiff's representatives that certain equipment, including gaming devices purchased and installed into the riverboat, would be component parts and would qualify for a state salesand-use-tax exemption under the statute. They also provided plaintiff with sales tax exemption forms to give to equipment vendors so that sales-and-use taxes would not be imposed.
Later, defendant revisited the issue. On March 4, 1994, Raymond Tangney, the Director of the Sales Tax Division, issued a memorandum stating the exemption would not apply to gaming equipment. There was no testimony that any one ever notified plaintiff of this change. In fact, the parties stipulated that plaintiffs receipt of the Notice after it was audited in 1995 was the first warning it had received that defendant had reversed its position and decided that the gaming equipment would not be subject to the exemption.
St. Pierre's and the previous line of cases finding defendant could not be estopped are factually distinguishable from this case. In the St. Pierre's line of cases, mistakes occurred due to clerical oversights or alleged misinformation. In this case, the Department's only established position at the time of its meeting with the plaintiff in regard to gaming and other installed equipment was that the exemption under Revised Statute 47:305.1(A) would apply to this equipment because it was a component part of the vessel. This was the position within the Department according to Roe, and this information was conveyed to plaintiff. This information was not solicited by a mere telephone call, as in many of the other cases, but was given in a meeting designed to help newcomers in a new industry appropriately handle tax matters. Furthermore, tax-exemption forms were disseminated and plaintiff was explicitly told to give the forms to vendors so that sales-and-use taxes would not be imposed in purchasing these items. One year later the Department revisited the issue, and changed its position. It decided that the term "component parts" referred to items that were used in the original construction of the vessel and that contributed to the navigability of the vessel; thus the gaming equipment did not qualify for the exemption. However, after the change in its position, the Department did not disseminate this new information as it had the previous year.
The jurisprudence has defined equitable estoppel as "the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct."[7] However, Civil Code article 1967, which codifies equitable estoppel (or detrimental reliance) states, "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." Based on either definition, equitable estoppel applies under the facts of this case. We find the trial court was correct in applying equitable estoppel to this case.

WERE THE ELEMENTS OF EQUITABLE ESTOPPEL MET?
As defined above, the doctrine of equitable estoppel is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary *394 to his prior acts, admissions, representations, or silence.[8] The supreme court has noted that estoppel is not favored in our law and properly applies only to representations of fact.[9] The representation required for the application of equitable estoppel is usually characterized as a "misrepresentation," which generally implies intent and suggests deliberate falsification.[10] However, a showing of bad faith is not always required, and estoppel applies when one induces another to believe certain facts intentionally or through culpable negligence.[11]
In Eicher v. Louisiana State Police, we stated that the supreme court had recognized three elements required for the application of detrimental reliance or equitable estoppel: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance.[12] However, we further stated that when invoking the doctrine against a governmental agency, a somewhat greater burden may be appropriate, which would involve (1) unequivocal advice from an unusually authoritative source, (2) reasonable reliance on that advice by an individual, (3) extreme harm resulting from that reliance, and (4) gross injustice to the individual in the absence of judicial estoppel.[13]
Applying the elements to the facts, the first element is unequivocal advice from an unusually authoritative source. Millet and McShane were members of the Task Force. Both were appointed by the Secretary of the Department to work on the Task Force. Millet was the regional tax director of one of the regional offices. Both Millet and McShane testified that they were the persons who told plaintiff that this equipment was exempt from taxes under the statute. Based on these facts, this would be considered as unequivocal advice from an unusually authoritative source.
The next element is reasonable reliance on that advice by an individual. After being told the equipment was exempt from taxes, plaintiff was given tax exemption forms by Millet and McShane and were told to give them to vendors when purchasing the equipment. Therefore, plaintiff reasonably relied on that advice from Millet and McShane.
Next, extreme harm must result from that reliance. Plaintiff was not informed of a change in policy that occurred one year later. Plaintiff was made knowledgeable of the change after it was audited and was assessed the tax with interest. Being assessed with interest years later is extreme harm.
Finally, gross injustice must occur in the absence of judicial estoppel. Absent judicial estoppel, plaintiff would be required to pay taxes and interest on items it was explicitly told were exempt. One year later, after the department revisited the matter, the policy was changed, but the information was not disseminated. Yet, after it was audited and assessed taxes and interest, plaintiff was finally notified of a change in policy, which resulted in gross injustice. The final element is met. Thus, defendant's assertion that the trial court erred in finding that it is estopped from demanding payment of tax and interest due in this case is without merit.
Under Civil Code article 1967, the "recovery [under detrimental reliance or equitable estoppel] may be limited to the expenses incurred or the damages suffered *395 as a result of the promisee's reliance on the promise." The trial court found:
[T]here is a strong argument in this case that the only expenses incurred or damages suffered is the payment of the interest. However, as I read R.S. 47:1601, which deals with interest on unpaid taxes, that is a mandatory statute, and if the tax is due, the interest is due, and if the tax is not due, the interest is not due, and I don't see any way to separate out the interest from the tax. It seems to make it an all or nothing proposition. So, since I have found that the doctrine of equitable estoppel does apply, I find the department is estopped from demanding this payment, and I direct the department to repay to the plaintiff the amount of the tax, plus the interest paid on the contested items, plus all costs associated with this suit.
Revised Statute 47:1601, entitled "Interest on unpaid taxes," provides in pertinent part, "The interest provided for herein shall be an obligation to be collected and accounted for in the same manner as if it were a part of the tax due ...." Therefore, the trial court's assessment is correct in that the interest and the tax must be levied together or not at all. Therefore, defendant is estopped from demanding payment of the tax and interest on the contested items for the period in question.

CONCLUSION
Based upon the aforementioned, the judgment of the trial court that the Department is estopped from collecting taxes, together with interest, on the gaming equipment, surveillance equipment, and signs from plaintiff during the time period they were audited is affirmed. Costs of appeal are assessed against defendant for $2,415.40.
AFFIRMED.
PARRO, J., dissenting in part with reasons.
PARRO, J., dissenting in part.
Equitable estoppel is not favored and in its application, will always ameliorate or supercede, to some extent, strict statutory requirements or conventional obligations. I believe Louisiana Civil Code article 1967, which allows recovery to be limited to the expenses incurred or damages suffered, should be applied to ameliorate or supercede the application of Louisiana Revised Statute 47:1601, which requires interest to be collected as if it were part of the taxes due. There is no dispute in this case that, had the plaintiff been properly informed at the outset, it would have timely paid the applicable sales taxes. Therefore, the only "extreme harm" and "gross injustice" the plaintiff has suffered from the misinformation communicated to it by the Department is the interest that accrued on those taxes before the plaintiff received the audit results and paid the taxes and interest under protest. For that reason, I would apply equitable estoppel only to the Department's attempt to enforce the collection of interest from the plaintiff, and would affirm the trial court's judgment to that extent. I respectfully dissent from that portion of the opinion affirming the trial court's application of equitable estoppel to the Department's attempt to enforce the collection of the sales and/or use taxes from the plaintiff.
NOTES
[1] R.S. 47:305.1(A), entitled "Exclusions and exemptions; ships and ships' supplies," provides, in pertinent part:

The tax imposed by R.S. 47:302(A)(1), 321(A)(1), and 331(A)(1) shall not apply to sales of materials, equipment, and machinery which enter into and become component parts of ships, vessels, or barges, including commercial fishing vessels, drilling ships, or drilling barges...."
[2] Although three business entities filed the petition, we refer to them collectively as one plaintiff, since they all owned one riverboat.
[3] 495 So.2d 1295,1297 (La.1986).
[4] See Traigle v. Parish of Calcasieu, 296 So.2d 411 (La.App. 3d Cir.1974); Collector of Revenue v. J.L. Richardson Co., 247 So.2d 151 (La.App. 4th Cir.), writ denied, 258 La. 915, 248 So.2d 586 (1971). Claiborne Sales Co. v. Collector of Revenue, 233 La. 1061, 99 So.2d 345 (1957).
[5] 233 La. 1061, 99 So.2d 345 (1957).
[6] The memo referred to R.S. 47:305.1(B). At trial, however, Roe testified that was a typographical mistake and the correct reference was to 47:305.1(A).
[7] Morris v. Friedman, 94-2808, p. 8, (La.11/27/95), 663 So.2d 19, 25.
[8] Hammons v. ABB C-E Services, 94-2444, p. 1, (La.App. 1st Cir.10/6/95), 671 So.2d 370, 376 (Shortess, J., concurring).
[9] Eicher v. Louisiana State Police, 97-0121 (La.App. 1st Cir.2/20/98), 710 So.2d 799, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51.
[10] 97-0121 at 7,710 So.2d at 804.
[11] Hammons, 94-2444 at 2, 671 So.2d at 377.
[12] Eicher, 97-0121 at 7, 710 So.2d at 804.
[13] Id.