IN THE MATTER OF JACKPOT ENTERPRISES, L.L.C.
v.
LOUISIANA GAMING CONTROL BOARD
No. 2009 CA 0164
Court of Appeals of Louisiana, First Circuit.
November 17, 2009
Not Designated for Publication
CHRISTOPHER L WHITTINGTON, STEPHEN K. SCHILLING, Attorneys for Plaintiff-Appellee, Jackpot Enterprises, L.L.C.
HON. JAMES D. "BUDDY" CALDWELL Attorney General, KAREN L. GODWIN CHRISTOPHER B. HEBERT, KATIE D. CHABERT DANIELLE A. BOUDREAUX, Asst. Attorneys General Attorneys for Defendant-Appellant Louisiana Gaming Control Board
Before: PETTIGREW, McDONALD, AND HUGHES, JJ.
PETTIGREW, J.
This is an appeal by the State of Louisiana, through the Louisiana Gaming Control Board (hereinafter referred to as "the Board"), of a judgment on a Petition for Judicial Review, rendered by the 19th Judicial District Court, on December 9, 2008. Said judgment reversed the Board's finding as to the unsuitability of Joseph R. Palermo, Jr. (hereinafter referred to as "Mr. Palermo") and reversed the Board's denial of a Type 6 Video Draw Poker License to Jackpot Enterprises, L.L.C. d/b/a Jackpot Enterprises (hereinafter referred to as "Jackpot"). For the reasons hereinafter enumerated, we reverse the judgment of the 19th Judicial District Court, rendered on December 9, 2008.

STATEMENT OF THE CASE
On September 5, 2001, Jackpot submitted an application for a Type 6 Video Draw Poker License as a device owner. The application identified Mr. Palermo as the sole owner of Jackpot. Following a suitability investigation conducted on Mr. Palermo by the Louisiana State Police (hereinafter referred to as "the LSP"), the Board issued a Notice of Recommendation of Denial on August 15, 2005, which found Mr. Palermo to be unsuitable, and accordingly denied Jackpot's original application.
An administrative hearing was held in this matter before the Board's hearing officer, who determined that Mr. Palermo had not carried his burden of proving suitability, and for this reason, the hearing officer, on August 27, 2007, denied Jackpot's application for a Type 6 Video Draw Poker License. On September 11, 2007, Jackpot appealed the hearing officer's decision to the Board. On November 13, 2007, the Board denied Jackpot's appeal and affirmed the decision of the hearing officer.
Jackpot filed a Petition for Judicial Review of the Board's decision in the 19th Judicial District Court, Parish of East Baton Rouge, on November 26, 2007. On December 9, 2008, the district court reversed the denial by the Board of a Type 6 Video Draw Poker License to Jackpot and the finding of unsuitability as to Mr. Palermo. The Board now appeals from the district court's judgment of December 9,2008.

BACKGROUND FACTS
Prior to Jackpot's submission of an application for a Type 6 Video Draw Poker License on September 5,2001, the following events took place:
Earlier, on February 17, 1992, Jackpot Novelty, Inc. (hereinafter referred to as "Novelty"), a corporation principally owned by Mr. Palermo, filed an application with the LSP, Video Poker Gaming Division (hereinafter referred to as "the Division"), seeking a video poker license. Prior to issuance of a video poker license, all officers and directors of the entity seeking a license have to be deemed suitable, meaning that they must undergo a suitability investigation regarding arrests, convictions, grand jury testimony, and civil litigation. Additionally, an applicant's tax returns must also be submitted as part of the investigation.
In connection with Novelty's application, Mr. Palermo submitted a personal history record, disclosing that he had previously testified before a grand jury in the prosecution of William Hulls and two others. Mr. Palermo further referred the LSP to FBI Special Agent Don Dixon and U.S. Attorneys Larry Reagan and Rich Looney in the event further information was needed.
Novelty's license application was initially denied on May 22, 1992, because it was learned that one of the corporation's directors, Glenn `Tiny" Pittman, had a previous criminal conviction. Once Mr. Pittman was removed from the application. Novelty was issued a license. Several months later, the LSP recommended that said license be revoked based upon Mr. Palermo's trial testimony in the matter entitled United States v. Robert Graves. Following an investigation, the LSP rescinded the revocation on January 5, 1993. The license was renewed from 1993 to 1996. By virtue of a compromise agreement between Mr. Palermo and the licensing authorities, the license was not renewed for the period of 1997 to 1998.
During the years 1998-2001, Mr. Palermo was nevertheless deemed suitable for license applications he submitted in connection with a separate business venture, Bonnie, Inc., that operated Jackpot Junction Casino in Sulphur, Louisiana. In 2001, Mr. Palermo sold his twenty-five percent interest in this casino, which brings us to the present dispute that arose when Mr. Palermo decided to re-submit an application for a Type 6 Video Draw Poker License as the sole proprietor of Jackpot.

ISSUES PRESENTED BY THE BOARD FOR REVIEW
In connection with its appeal in this matter, the Board presents the following issues for review and determination by this court:
A. Whether the district court erred by failing to apply the appropriate standard on judicial review;
B. Whether the district court erred by relying on evidence not in the record in making its decision; and
C. Whether the district court erred in reversing the Board's decision on judicial review:
1. Whether the Board was correct in determining that Mr. Palermo failed to cooperate with the LSP-Gaming Licensing Section and therefore, did not carry his burden of proving suitability;
2. Whether the Board was correct in relying on Mr. Palermo's involvement with corrupt public officials in determining that Mr. Palermo failed to demonstrate his suitability to possess a Type 6 Video Draw Poker License;
3. Whether the standard for judicial review set forth in La. R.S. 49:964 supports the hearing officer and Board's decision to deny Jackpot's Type 6 Video Draw Poker License application.

STANDARD OF REVIEW
A person whose application for a video poker license has been denied has the right to a hearing before the Division. The hearing must be conducted in accordance with the provisions of the Administrative Procedure Act. La. R.S. 27:310(E). All parties, including the Division, shall have the right to appeal any adverse ruling to the 19th Judicial District Court. La. R.S. 27:310(E); La. R.S. 27:26. The Administrative Procedure Act specifies that judicial review shall be confined to the record as developed in the administrative proceeding. La. R.S. 49:964(F). The district court may reverse or modify the agency decision if substantial rights of the appellant are prejudiced, because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or an abuse of discretion; or (6) manifestly erroneous. La. R.S. 49:964(G); Pacificorp Capital, Inc. v. State, through the Division of Administration, 92-1729, pp. 4-5 (La. App. 1 Cir. 8/11/94), 647 So.2d 1122, 1125, writ denied, 94-2315 (La. 11/18/94), 646 So.2d 387; Eicher v. Louisiana State Police, 97-0121, pp. 4-5 (La. App. 1 Cir. 02/20/98), 710 So.2d 799, 802, writ denied, 98-0780 (La. 05/08/98), 719 So.2d 51.
The manifest error test is used in reviewing the facts as found by the administrative tribunal; the arbitrary and capricious test is used in reviewing the administrative tribunal's conclusions and its exercise of discretion. Save Ourselves, Inc. v. La. Environmental Control Commission, 452 So.2d 1152, 1159 (La. 1984). On legal issues, the reviewing court gives no special weight to the findings of the administrative tribunal, but conducts a de novo review of questions of law and renders judgment on the record. State, through Louisiana Riverboat Gaming Commission v. Louisiana State Police Riverboat Gaming Enforcement Division, 95-2355, p. 5 (La. App. 1 Cir. 8/21/96), 694 So.2d 316, 319; Eicher, 97-0121 at p.5, 710 So.2d at 803.

DISCUSSION
In Louisiana, a gaming license is a privilege and not a right. Louisiana Revised Statute 27:2(B) provides, in pertinent part:
Any license, casino operating contract, permit, approval, or thing obtained or issued pursuant to the provisions of this Title or any other law relative to the jurisdiction of the board is expressly declared by the legislature to be a pure and absolute revocable privilege and not a right, property or otherwise, under the constitution of the United States or of the state of Louisiana. Further, the legislature declares that no recipient of any such license, casino operating contract, permit, any other thing, or affirmative board action or approval acquires any vested interest or right therein or thereunder.
In paragraph B of the Board's appeal, they raise the issue as to whether the district court erred by relying on evidence not in the record in making its decision. This issue raised by the Board centers around whether the district court inappropriately considered an affidavit allegedly signed on November 8, 2006, by Mr. Palermo, which would allow the Board to approach the FBI, the U.S. Attorney's Office, and the federal government to obtain copies of Mr. Palermo's testimony before the federal grand jury.[1] This alleged affidavit and waiver of federal privacy rights of November 8, 2006, is not part of the record of this proceeding, and it was not introduced at the hearing before the Board.[2]
In oral reasons for judgment dated November 25, 2008, the district court stated, "Mr. Palermo did all that he could do to make sure that they [the LSP] had the documents that they wanted or needed." This statement by the district court forms the basis of the Board's argument that the judge considered something outside of the record, which was not entered into evidence during the administrative proceedings held on November 8, 2006.
Louisiana Revised Statute 49:964(F) relating to judicial review of adjudications provides:
F. The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.
The issues in this appeal do not involve irregularities in the procedure of the adjudication hearing. Therefore, the review by this court is confined to the record introduced in this case.
Judicial review of the decision of an administrative agency is an exercise of a court's appellate jurisdiction. La. Const, art. V, § 16. A district court may not receive evidence when sitting as an appellate court. Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 01-0185, p. 7 (La. 10/16/01), 797 So.2d 656, 661. The alleged affidavit of Mr. Palermo, dated November 8, 2006, was not introduced at the administrative hearing, nor is it part of the record of this proceeding. Therefore, it would be legal error on the part of the district court to consider it in rendering its decision. However, from our review of the record and the district court's oral reasons for judgment dated November 25, 2008, we cannot ascertain whether the district court considered the alleged affidavit of November 8, 2006, or not. For this reason, this assignment of error is without merit.
Louisiana Revised Statute 27:310 controls the suitability requirements for applicants for a Type 6 Video Draw Poker License as a device owner. That statute, in part, provides:
B. (1) No person shall be granted a license under the provisions of this Chapter unless the applicant has demonstrated to the division that he is suitable for licensing. For purposes of this Chapter, suitability means the applicant or licensee is:
(a) A person of good character, honesty, and integrity.
(b) A person whose prior activities, arrest or criminal record if any, reputation, habits, and associations do not pose a threat to the public interest of this state or to the effective regulation of video draw poker, and do not create or enhance the dangers of unsuitable, unfair, or illegal practices, methods, and operations in the activities authorized by this Chapter and financial arrangements incidental thereto.
(c) Likely to conduct business as authorized by this Chapter in complete compliance with the provisions of this Chapter.
(d) Not prohibited from making application or disqualified from licensure under the provisions of Subsection A of this Section.
(e) A person who does not owe the state or local governing authority of the parish or municipality in which the establishment is located any delinquent sales taxes, penalties, or interest, excluding items under formal appeal or protest as provided by law.
(2) An applicant who is not disqualified from making application or licensure as a result of Subsection A of this Section shall still be required to demonstrate to the TDIivision that he otherwise meets the remaining requirements for suitability, particularly those contained in Subparagraphs (1)(a), (b), and (c) of this Subsection. Evidence of or relating to an arrest, summons, charge, or indictment of an applicant, or the dismissal thereof, shall be considered by the [D]ivision even if the arrest, summons, charge, or indictment results in acquittal, deferred adjudication, probation, parole, or pardon.
....
D. Every person who has or controls directly or indirectly more than a five percent ownership, income, profit interest in an entity which has or applies for a license in accordance with the provisions of this Chapter, or who receives more than five percent revenue interest in the form of a commission, finder's fee, loan repayment, or any other business expense related to the gaming operation, or who has the ability, in the opinion of the division, to exercise a significant influence over the activities of a licensee authorized or to be authorized by this Chapter, shall meet all suitability requirements and qualifications for licensees. For the purposes of this Chapter, all gaming related associations, outstanding loans, promissory notes, or other financial indebtedness of an applicant or licensee must be revealed to the [D]ivision for the purposes of determining significant influence and suitability. (Emphasis added.)
It is clear from the above cited statute that the burden of proving suitability is placed upon the applicant, not the Board. See, Twin B. Casinos, Inc. v. State, through Louisiana Gaming Control Board, 00-1681, p. 8 (La. App. 1 Or. 9/28/01), 809 So.2d 995, 1000. Said statute provides an automatic exclusion in La. R.S. 27:310(A). For those individuals who are not automatically excluded, suitability is further defined as stated above in La. R.S. 27:310(B).
The video gaming regulations further provide as follows:
LAC 42:XI.2405.A.9
All applicants shall provide all additional information requested by the [Division. If applicant fails to provide all additional information requested by the [D]ivision, the application shall be considered incomplete.
LAC 42:XI.2405.A.12
Incomplete applications ... may result in a delay or denial of a license.
On September 5, 2001, Jackpot submitted an application for a Type 6 Video Draw Poker License as a device owner. The application identified Mr. Palermo as the sole owner of Jackpot. On September 17, 2002, Sgt. Gary Bridges of the LSP conducted a telephone interview with Mr. Palermo, wherein Mr. Palermo claimed he wanted to give the LSP authorization to review his federal grand jury testimony in some federal investigations previously disclosed by Mr. Palermo in earlier suitability applications and earlier applications for other entities.
Accordingly, on April 4, 2003, the Division sent a written request for release to Mr. Palermo, which asked Mr. Palermo to sign the special release enclosed therewith within 10 days of the receipt of the correspondence. The release sought authorization for disclosure of certain reports relating to a federal investigation that the LSP thought relevant to the licensing investigation of Jackpot. Mr. Palermo never returned the requested release, but, rather, on April 23, 2003, he submitted a different release to the LSP. The release submitted to the LSP was the standard form requested from all gaming license applicants, and it did not meet the requirements necessary to obtain the specific documentation sought by the LSP pertaining to the federal investigations. The release sought by the LSP contained a waiver of federal privacy rights to assist the Division in an attempt to get a copy of Mr. Palermo's prior felony grand jury testimony in the Vaughn and Graves investigations.
On June 24, 2003, Mr. Palermo filed suit in the U.S. District Court for the Western District of Louisiana to prevent the federal government from releasing any information to the Board. Even if the LSP could not have gotten the records from the federal government (because it was federal grand jury testimony), Mr. Palermo affirmatively opposed the disclosure and release of the federal records sought by the LSP in its investigation of Jackpot's application for licensure through the following acts: (1) by failing to sign the affidavit sent to him by the LSP on April 4, 2003; (2) by seeking injunctive relief and expungement of federal records in the Lake Charles Division, U.S. District Court for the Western District of Louisiana; and (3) by filing an opposition to the release of the records to the LSP in the Lafayette-Opelousas Division of the U.S. District Court of the Western District of Louisiana.
An administrative hearing in this matter was held before the Board's hearing officer on April 24, 25, 26, and 27, 2007, with the hearing officer's decision and order being rendered August 27, 2007. Said order provides as follows:
Considering all the evidence introduced at the hearing, I do not find that Joseph R. Palermo, Jr. has carried his burden of proving suitability;
Accordingly, Jackpot Enterprises, LLC d/b/a Jackpot Enterprises' application for a Type 6 video draw poker gaming license is denied.
In his reasons for judgment, the hearing officer further stated:
Suitability means a person is of good character, honesty and integrity. Does a person of good character, honesty, and integrity bribe a Police Jury for a vote? Does a person of good character, honesty, and integrity help concoct a scheme to help a friend misrepresent the source of cash funds to avoid taxes? I think not!
Further, the record is clear that Joseph R. Palermo, Jr. did not cooperate with the Division in providing a signed affidavit for the Division to acquire additional information as to his suitability....
On September 11, 2007, Jackpot appealed the hearing officer's decision to the Board, which ultimately affirmed the hearing officer's decision. Thereafter, on November 26, 2007, Jackpot filed a petition for judicial review of the Board's decision. The district court held in its December 9, 2008 decision, that "the denial by the Louisiana Gaming Control Board of a Type 6 Video Draw Poker License to Jackpot Enterprises, L.L.C., finding that Joseph R. Palermo, Jr. unsuitable is reversed." In his oral reasons for judgment, the district court stated, "Mr. Palermo did all that he could do to make sure that they [the LSP] had the documents that they wanted or needed."
After a thorough review of the record, we could not find any factual support or legal reason to support the district court's determinations and its reversal of the hearing officer's and Board's decisions to deny Jackpot's application for a Type 6 Video Draw Poker License as a device owner.

CONCLUSION
For the above enumerated reasons, we reverse the district court's judgment of December 9, 2008, and reinstate the hearing officer's decision of August 27, 2007. Said decision was later affirmed by the Board, and denied Jackpot Enterprises, L.L.C. d/b/a Jackpot Enterprises' application for a Type 6 Video Draw Poker License.
REVERSED. THE DECISION OF THE HEARING OFFICER AND THE BOARD IS REINSTATED.
NOTES
[1] This involves Mr. Palermo's testimony before federal grand juries investigating two matters; one being the John Vaughn investigations in the 1980s, and the other being the Robert Graves investigation in 1992. On previous suitability investigations for other corporate entities, Mr. Palermo had not been asked to sign this affidavit containing a waiver of Federal Privacy Rights.
[2] We note for the record that even assuming Mr. Palermo signed the affidavit of Nov. 8, 2006, and said affidavit could be considered by this court, the fact remains Mr. Palermo did not sign the affidavit until three and one-half years after being requested to do so by the LSP on April 22, 2003.