808 So.2d 710 (2001)
Chad LIGHTFOOT
v.
Richard STALDER, Kelly Ward, Alton Braddock, Archie Aultman, Jean Baker, and Travis Tippen.
No. 2000 CA 1120.
Court of Appeal of Louisiana, First Circuit.
June 22, 2001.
*712 Chad Lightfoot, Homer, in Proper Person.
Andre Charles Castaing, Baton Rouge, for Defendants-Appellees Richard Stalder, Kelly Ward, Alton Braddock, Archie Aultman, Jean Baker, and Travis Tippen.
Before: GONZALES and PETTIGREW, JJ., and SEXTON,[1] J. Pro Tem.
PETTIGREW, J.
This action was filed by an inmate seeking judicial review of a disciplinary decision made by the Louisiana Department of Public Safety and Corrections ("DOC"). The district court, upon recommendation of the commissioner, rendered judgment in favor of DOC and against the inmate, dismissing the inmate's suit at his cost. The *713 district court further ordered that the dismissal of the inmate's claim of cruel and unusual punishment be considered a "strike" due to its frivolous nature and the inmate's failure to state a cognizable claim. From this judgment, the inmate now appeals to this court.

FACTS
Petitioner Chad Lightfoot, an inmate at David Wade Correctional Center ("DWCC") in Homer, Louisiana, initially filed a request for Administrative Remedy Procedure ("ARP") on November 25, 1998.[2] Lightfoot alleged therein that Sergeant Travis Tippen, a corrections officer assigned to the dormitory in which he was housed, was repeatedly observed taking medications from an unmarked bottle and thereafter falling asleep while on duty. It was further alleged that Sergeant Tippen was "already partially disabled or a retard" and unable to fully protect Lightfoot and the inmates housed around him. Claiming Sergeant Tippen's alleged "handicap" coupled with his ingestion of "numerous amounts of pills" affected his ability to perform the duties of his job, Lightfoot alleged that Sergeant Tippen's "show of retardation" purportedly placed "all inmates in grave danger." Lightfoot stated that inmates "should not be subject to such danger" and requested that Sergeant Tippen "be placed in a working environment that is suitable to his handicap, retardation, or illness."
In response to his ARP request, Lightfoot received a First Step Response Form dated December 14, 1998, from Major Ray Hanson who found no facts to substantiate Lightfoot's claim.
On December 19, 1998, Lightfoot filed a request for a Second Step review. Lightfoot received a Second Step Response Form dated January 8, 1999, from Warden Kelly Ward. In his response, Warden Ward stated that Lightfoot's earlier comments regarding Sergeant Tippen constituted a violation of Rule # 3Defiance, as set forth in the DOC's Disciplinary Rules and Procedures for Adult Inmates (First Edition, 1993), and advised that Lightfoot would be issued a Disciplinary Report for his comments.
Lightfoot was issued a Disciplinary Report by Deputy Warden Alton Braddock dated January 6, 1999, that charged him with a violation of disciplinary Rule # 3. The report charged that in the previously filed ARP, Lightfoot had been "deliberately malicious" in referring to Sergeant Tippen as a "retard," but Lightfoot was not placed in administrative segregation. It appears that perhaps the lower portion of this report was completed following a disciplinary hearing held on January 12, 1999, for it also states that Lightfoot was adjudged to be guilty of the rule violation and was sentenced to a custody change to maximum-working cellblock and two weeks of confinement.[3] This portion of the report was signed by Disciplinary Board Chairman, Major Archie Aultman, and board member, Jean Baker.
On January 16, 1999, Lightfoot appealed from the decision of the disciplinary board and alleged that the determination that he was guilty of a disciplinary violation was an abridgment of his constitutionally-protected right to free speech. In an appeal decision rendered February 17, 1999, Warden Ward upheld the decision of the Disciplinary Board and denied Lightfoot's appeal.[4] *714 Lightfoot subsequently appealed to the DOC Secretary. In a decision rendered September 7, 1999, Assistant DOC Secretary, Johnny Creed, affirmed the earlier decisions of the Disciplinary Board and Warden Ward.

ACTION OF THE DISTRICT COURT
Having exhausted his administrative remedies, Lightfoot filed a petition for judicial review in the Nineteenth Judicial District Court on November 3, 1999. DOC Secretary Richard Stalder, Warden Kelly Ward, Deputy Warden Alton Braddock, Jean Baker, Major Archie Aultman, and Sergeant Travis Tippen were all named as defendants in the suit filed by Lightfoot. The basis of Lightfoot's suit is that he was subjected to disciplinary action and/or retaliation for exercising his right to free speech pursuant to the First Amendment. Lightfoot further alleges that he was subjected to cruel and unusual punishment through DOC's use of "improper and disfunctional [sic] security personnel." Lightfoot moved for, and was granted, the right to proceed in forma pauperis. A certified copy of the administrative record was attached to, and filed into the record with, DOC's answer to Lightfoot's petition for judicial review.
After a review of Lightfoot's claim, the Nineteenth Judicial District Court Commissioner recommended that Lightfoot's suit be dismissed. The commissioner further recommended that dismissal of Light-foot's claim of cruel and unusual punishment be considered a "strike" pursuant to the Prison Litigation Reform Act (PLRA), La. R.S. 15:1181 et seq., for the reason that said "complaint fails to state a cognizable claim and is frivolous."[5] Upon review of the record and consideration of a traversal of the commissioner's report filed by Lightfoot, the Nineteenth Judicial District Court agreed with the commissioner's findings and dismissed Lightfoot's suit. The district court further ordered that the dismissal of Lightfoot's claim of cruel and unusual punishment be considered a "strike" pursuant to La. R.S. 15:1187 of PLRA[6].
Following the denial of his motion for a new trial, Lightfoot moved for a devolutive appeal to this court.

ASSIGNMENTS OF ERROR
In connection with his appeal in this matter, Lightfoot asks that this court consider the following assignments of error:
1. The trial court erred by failing to adjudge that the appellant's rights to free speech, access to the courts, and due process of law were violated.
2. The trial court erred by failing to adjudge that the appellant's rights to be free from retaliation was [sic] violated.
3. The trial court erred by applying a "strike" against the appellant.
4. The trial court erred by failing to award the appellant a new trial.

*715 5. The trial court erred by failing to expand the record.

DISCUSSION
In his brief to this court, Lightfoot argues that the disciplinary rules were unconstitutionally applied against him. Specifically, Lightfoot contends that he received a rule violation report in retaliation for having filed an ARP against Sergeant Tippen for his alleged misconduct. Lightfoot also argues that the district court erred in dismissing his allegations as frivolous and imposing a "strike" against him. Finally, Lightfoot argues that the district court erred in denying his motion to expand the record and concluding that his actions violated disciplinary rules.
This court discussed the administrative review procedure provided for in the Corrections Administrative Remedy Procedure Act (CARP), La. R.S. 15:1171, et seq. in Robinson v. Stalder, 98-0558 (La.App. 1 Cir. 4/1/99), 734 So.2d 810:
Through the Corrections Administrative Remedy Procedure Act, LSA-R.S. 15:1171, et seq., the prison systems were given authority to adopt procedures for offenders to produce evidence to substantiate their claims. Blackwell v. Louisiana Department of Public Safety and Corrections, 96-0954, p. 6 (La.App. 1st Cir.2/14/97); 690 So.2d 137, 141, writ denied, 97-1158 (La.9/5/97); 700 So.2d 507. A simple review of the Act evidences that its procedures are designed primarily as an internal investigative and information-gathering mechanism, a function of particular importance in the prison setting, since most, if not all, of the evidence is at the prison itself. Blackwell, 96-0954 at p. 9; 690 So.2d at 142.
. . . .
The Corrections Administrative Remedy Procedure promotes the State's interest in prompt and fair internal resolution of inmate grievances and, consequently, does not violate an inmate's right to substantive due process. Blackwell, 96-0954 at p. 11; 690 So.2d at 143. Furthermore, an inmate's right to procedural due process is satisfied by the availability of judicial review. Blackwell, 96-0954 at p. 11; 690 So.2d at 143.
Pursuant to the Corrections Administrative Remedy Procedure Act, review of a decision by the [DOC] made in the course of the Corrections Administrative Remedy Procedure shall be conducted by the court without a jury and shall be confined to the record. The review shall be limited to the issues presented in the petition for review and the administrative remedy request filed at the agency level. LSA-R.S. 15:1177(A)(5).
Thus, under the statutory framework of the Corrections Administrative Remedy Procedure Act, the opportunity for the parties to present evidence occurs at the administrative level, not at the trial court level, and review by the trial court is limited to the record established at the administrative level, absent alleged irregularities in the procedure. See LSA-R.S. 15:1177(A)(5).
Robinson, 98-0558, at 3-4, 734 So.2d at 811-812. (Emphasis deleted.)
The standard for judicial review by the district court is set forth, in pertinent part, in La. R.S. 15:1177(A)(9), which provides:
The court may reverse or modify the decision only if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(a) In violation of constitutional or statutory provisions.

*716 (b) In excess of the statutory authority of the agency.
(c) Made upon unlawful procedure.
(d) Affected by other error of law.
(e) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
(f) Manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
In an extensive report, the commissioner recommended that Lightfoot's appeal be dismissed. The commissioner cited Woods v. Smith, 60 F.3d 1161 (5th Cir.1995), for the proposition that an inmate seeking to prevail in a retaliation claim must allege violation of a specific constitutional right and establish that but for the retaliatory motive the complained of actionin the instant case, the filing of a disciplinary reportwould not have occurred. See Woods, 60 F.3d at 1166. The commissioner further stated that:
Given the very heavy burden of proof, the record in this case does not support a finding that retaliation was the motive behind filing the disciplinary charge in this case. The use of insulting or abusive language is prohibited by written rules that [Lightfoot] was aware of. The use of the derogatory appellation "retard" to describe a corrections officer could reasonably be interpreted to be insulting, and therefore, a violation of Rule # 3 [of DOC's Disciplinary Rules and Procedures for Adult Inmates (First Edition, 1993)].
. . . .
Even though an inmate has a right to file a grievance, and to seek judicial review in the Courts, such right is not without legitimate restraints on the content of the complaint. An inmate is not free to abuse, vilify and/or insult prison officials with impunity and without regard to the language he uses, simply because he has a right to complain. It is clear from the complaint in WCC-98-1418 that the derogatory appellation was superfluous and unnecessary to describe [Lightfoot's] complaint adequately. It was not unreasonable of the prison officials to find it so, and additionally to find it a disciplinary violation of Rule # 3. Further, the only penalty imposed was a classification change and temporary cell confinement, (which does not raise a substantial right violation.) Consequently, [Lightfoot] has failed to carry his burden of proof that his constitutional rights were violated by the administration in this matter, and therefore [DOC's] decision to deny relief should be maintained. [Footnotes omitted.]
Upon review of the record, we agree.
Accordingly, we find no error in the dismissal of Lightfoot's petition for judicial review and affirm the decision of the district court. Additionally, and considering the frivolous nature of Lightfoot's claim as to cruel and unusual punishment, we affirm the recommendation of the commissioner and the district court's finding that said claim constituted a successive claim or "strike" pursuant to La. R.S. 15:1187 of PLRA.
In his appeal to this court, Lightfoot contends that the district court erred in failing to grant his motion for a new trial and permit expansion of the record.[7] *717 Pursuant to La. R.S. 15:1177(A)(5), judicial review is limited to the issues presented in the petition for judicial review and the administrative remedy request. Under the CARP, the opportunity for the parties to present evidence occurs at the administrative level. Robinson, 98-0558 at 4, 734 So.2d at 812. Lightfoot does not specifically state what additional evidence he would have had the district court consider. Lightfoot only requests a new trial for the purpose of reargument.
When reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court. Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Division, 97-0121, p. 5 (La.App. 1 Cir. 2/20/98), 710 So.2d 799, 803, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51. Accordingly, an application for new trial in this circumstance can be analogized to an application for a rehearing in the appellate court, pursuant to La.Code Civ. P. article 2166. Eicher, 97-0121 at 5, 710 So.2d at 803. The purpose of allowing an application for rehearing is to afford to litigants, whose rights and interests are affected by the judgment, an opportunity to have an erroneous judgment corrected by the court deciding it. The evaluation of whether to grant a rehearing is solely within the discretion of the court. Eicher, 97-0121 at 5-6, 710 So.2d at 803. We see no abuse of such discretion in this case. These assignments of error are without merit.
In addition to the foregoing reasons, we believe this case should be dismissed for an alternate reason. Neither side has raised the issue of this court's appellate jurisdiction.
As noted, the Nineteenth Judicial District Court functioned as an appellate court in its review of this matter. See Eicher, 97-0121 at 5-6, 710 So.2d at 803. Lightfoot now seeks to appeal to this court as a matter of right.
In 1997, the Legislature amended both CARP and the Administrative Procedure Act (APA), La. R.S. 49:951 et seq. The appellate section of CARP, La. R.S. 15:1177, was amended to remove the reference to the APA. 1997 La. Acts No. 1216. Louisiana Revised Statute 15:1177 was revised to incorporate many of the same provisions that existed in the appellate section of the APA, La. R.S. 49:964. See Victorian v. Stalder, 99-2260, pp. 3-4 (La.App. 1 Cir. 7/14/00), 770 So.2d 382, 387, (Gonzales, J., concurring).
Act No. 1216 of 1997 further amended the APA to exclude the applicability of the judicial review provisions of the APA to actions filed under CARP, by amending La. R.S. 49:964(A) to provide, "Except as provided in R.S. 15:1171 through 15:1177, a person who is aggrieved by a final decision or order ... is entitled to judicial review." This, along with the language in CARP, denominating it as the exclusive remedy, was interpreted by this court in Victorian v. Stalder. The sum and substance of these legislative changes and the opinion in Victorian v. Stalder[8] mean that the APA no longer applies to review of any prisoner suits that now must be filed under CARP, unless said suits involve a vested property right and/or a liberty interest.
*718 As Judge Gonzales observed in his concurring opinion in Blair v. Stalder, 99-1860 (La.App. 1 Cir. 1/31/01), 798 So.2d 132,
The APA contains a provision authorizing an appeal of an appeal. That is La. R.S. 49:965,2 which is the section relied on in Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Division, [97-0121 (La.App. 1 Cir. 2/20/98), 710 So.2d 799, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51] and cited in the majority opinion [in Blair]. What Act 1216 of 1997 failed to do, when it opted CARP out of the APA, was to incorporate into CARP a provision similar to La. R.S. 49:965, authorizing an appeal of an appeal.
Therefore, there is no appellate authority to appeal from the district court, the first level of appellate review, to this court as a matter of right.
2 Louisiana Revised Statute 49:965 provides: "An aggrieved party may obtain a review of any final judgment of the district court by appeal to the appropriate circuit court of appeal. The appeal shall be taken as in other civil cases."
Blair v. Stalder, 99-1860 at 798 So.2d 139, (Gonzales, J., concurring).
There have been no cases interpreting the absence of a second right of appellate review since CARP was amended by Act No. 1216 of 1997.[9] For this reason, we have elected to address Lightfoot's appeal rather than summarily dismissing same due to a lack of appellate jurisdiction. However, we note that the facts of this case do not involve a vested property right or a liberty interest. Thus, Lightfoot had no right of appeal from the decision of the Nineteenth Judicial District Court. Lightfoot's remedy would be to apply to this court for a writ of supervisory review of the decision rendered by the district court. For these additional reasons, Lightfoot's case should be dismissed.

CONCLUSION
For the above and foregoing reasons, the judgment of the district court is hereby affirmed. All costs associated with this appeal are assessed against petitioner/appellant, Chad Lightfoot.
AFFIRMED.
GONZALES, J., agrees and assigns additional reasons.
*719 GONZALES, Judge.
I agree with the majority opinion and write separately to applaud Judge Pettigrew's opinion. In a time when this court is struggling with a crushing caseload, it is appropriate to review and specifically delineate the extent of our subject matter jurisdiction.
The CARP has a valuable purpose. It was enacted at a time when the federal courts were experiencing an overload of litigation similar to our current situation. At the insistence of the federal judiciary, which at the time exercised virtual control over Louisiana's prison system, the State enacted CARP to provide an administrative remedy procedure for prisoners similar to the one used in the federal prison system.[1] The CARP was intended to allow a structured procedure for prisoners to litigate legitimate claims.[2]See La. R.S. 15:1172(A); King v. State ex rel. Louisiana Department of Public Safety and Corrections, 98-2910 (La.App. 1 Cir. 2/18/00), 754 So.2d 1119, 1121. For such a procedure to successfully fulfill its purpose, it is important that judicial oversight exist over the executive branch's operation of the correctional system, particularly in cases where property rights, liberty interests, and other constitutionally protected rights are at issue. However, the CARP was not intended to encourage prisoners to assert frivolous claims or to obtain judicial review of those claims. See La. R.S. 15:1187.
Further, despite the necessity of judicial review over legitimate prisoner claims, there is no reason why prisoners contesting disciplinary action should have greater rights to judicial review than ordinary citizens with more serious and challenging complaints. Under the CARP, a prisoner challenging a disciplinary action is provided with three levels of administrative review and a full appeal to the Nineteenth Judicial District Court. La. R.S. 15:1177. This access to review is usually provided free of charge (because the prisoner is generally allowed to proceed in forma pauperis), without the expense of retained counsel (because the prisoner represents himself), and is initiated and processed on forms provided by the State. In contrast, an ordinary citizen with a cause of action usually is required to retain and pay counsel and is afforded his day in court at the trial court level with only one subsequent appeal of right from a final judgment. There is little justification to allow a prisoner with a minor disciplinary complaint to more layers of judicial review than an ordinary civil litigant. Judicial economy demands that we focus on more significant matters.
In this case, Mr. Lightfoot has exhausted his administrative remedies and has exercised his one right to judicial appeal to the Nineteenth Judicial District Court. Because our decision in Victorian v. Stalder precludes the applicability of the APA as an additional appellate remedy, Mr. *720 Lightfoot has no further right to appellate review by appeal. I note, however, he may seek further judicial review by writs.
Alternatively, it could be argued that this court has appellate subject matter jurisdiction herein because Article V, § 10(A) of the Louisiana Constitution of 1974 confers appellate jurisdiction to the courts of appeal over all "civil matters." However, in Moore v. Roemer, 567 So.2d 75, 81 (La.1990) and In the Matter of American Waste, 588 So.2d 367, 371 (La.1991), the Louisiana Supreme Court indicated that "civil matters" are those that have been traditionally adjudicated in the district courts, such as the adjudication of disputes between private parties resulting in money judgments affecting only those parties.[3] "Civil matters" are those where private citizens have historically had the independent right to bring suit in the district court for relief. American Waste, 588 So.2d at 372. "Civil matters" generally do not include those where the government is a party or in matters of public law. Moore v. Roemer, 567 So.2d at 81. In American Waste, the supreme court determined that private citizens had never had the right to bring civil actions in the courts to force the issuance of waste disposal or water discharge permits, and, thus, environmental permitting matters did not constitute "civil matters" over which original subject matter jurisdiction was vested in the district courts. American Waste, 588 So.2d at 372-73.
In the present case, the review of Mr. Lightfoot's claim arises from an administrative agency. Under the CARP, he was afforded specific review by the Nineteenth Judicial District Court. However, Mr. Lightfoot's claim does not constitute a "civil matter" within the parameters set forth by the Moore and American Waste courts. Absent any claim of damage, a complaint about a guard sleeping is a matter that addresses itself exclusively to the administration of the prison. No court should interfere with the internal affairs of a prison system to review allegations regarding minor performance problems of its employees. See Victorian v. Stalder, 770 So.2d at 390-391 (Gonzales, J., concurring); Watts v. Phelps, 377 So.2d 1317, 1320 (La.App. 1 Cir.1979), writ denied, 380 So.2d 1210 (La.1980). Simply stated, Mr. Lightfoot's complaint about a sleeping guard is not the type of claim traditionally cognizable in a trial court, and, thus, is not a "civil matter." Rulings made pursuant to the CARP are matters based on public policy and public law and are much like the determinations of DEQ on environmental permitting matters as existed in American Waste.
Finally, regarding the merits of DOC's discipline of Mr. Lightfoot, I note the importance of the enforcement of a rule prohibiting defiance. In his complaint, Mr. Lightfoot chose to demean and disparage a prison guard. The DOC's administrative rule against defiance is intended to prevent verbal abuse of DOC personnel by prisoners. DOC should also avoid verbal abuse of prisoners and should certainly avoid physical abuse. To allow unrestricted verbal confrontation by prisoners would lead to retaliatory responses by DOC personnel, both verbally and physically. Failure to enforce the rule prohibiting defiance *721 would lead to the swift degeneration of discipline and safety in prisons and would result in more hazards to inmates and more CARP complaints.
NOTES
[1] Judge Fred C. Sexton, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Lightfoot's ARP request was designated WCC-98-1418.
[3] The report further indicates that a motion to dismiss was urged by Lightfoot at the hearing; however, this motion was subsequently denied.
[4] Lightfoot's disciplinary appeal was designated WCC-99-0082.
[5] The record also contains an "Amended Commissioner's Report" wherein the commissioner stated same was being submitted due to the discovery of a citation error contained in the original report.
[6] Louisiana Revised Statute 15:1187 bars a civil action or appeal in forma pauperis by a prisoner who has previously "brought an action or appeal in a state court that was dismissed on the grounds that it was frivolous, was malicious, failed to state a cause of action, or failed to state a claim upon which relief may be granted" on three prior occasions. An action that qualifies as one of the three or more prior dismissed actions is referred to as a "strike." See Frederick v. Ieyoub, 99-0616, pp. 8-9 (La.App. 1 Cir. 5/12/00), 762 So.2d 144, 150.
[7] As defendants point out in their brief to this court, Lightfoot's request to expand the record was contained in the text of his "Plaintiff's Consent to Adjudication by Commissioner." Said request was not mentioned in the commissioner's report or the judgment of the district court.
[8] Although the particular matter under review in Victorian v. Stalder was a disciplinary action, the legislative amendment makes CARP the exclusive remedy in prisoner suits and removes all CARP actions from the rules, procedures and guidelines of the APA.
[9] The only case addressing the issue of second appeal or the appellate court's jurisdiction since the adoption of the Louisiana Constitution of 1974 is Touchette v. City of Rayne, 321 So.2d 62 (La.App. 3 Cir.1975). The operative facts in Touchette occurred under the Louisiana Constitution of 1921; however, the decision itself was rendered in October of 1975. Although the Touchette opinion notes the constitutional change, it is clear that the case was decided under the Louisiana Constitution of 1921, because it follows Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (La.1971). The Touchette court states, "The Trosclair decision (that the appellate court cannot hear appeals from the district court when the district court sits as an appellate court) is no longer the law. Instead, the solution in Bowen, supra, is binding. The judicial review of an administrative decision is essentially a different process than the appellate review of a district court's judgment. This court therefore has appellate jurisdiction." Touchette, 321 So.2d at 64. This apparently means that since the lower court was acting as a court of original jurisdiction, there was appellate jurisdiction in the court of appeal. Why the Touchette court did not apply and interpret the Louisiana Constitution of 1974, that allows the lower court to act as an appellate court, is unknown; however, it was not clearly explained by the Louisiana Supreme Court until 1987 in Loop, Inc. v. Collector of Revenue, 523 So.2d 201, 203 (La.1987), wherein that court made it clear that "Generally, a court's review of an administrative tribunal's action is considered functionally to be an exercise of its appellate review jurisdiction." Therefore, Touchette, like Bowen, addressed jurisdictional questions based on the Louisiana Constitution of 1921. See Blair v. Stalder, 99-1860 at 798 So.2d 143, (Gonzales, J., concurring).
[1] Congress enacted the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. §§ 1997-1997j, in 1980 to provide an administrative remedy procedure for grievances of persons in mental institutions and correctional facilities. Pursuant to CRIPA, the Louisiana legislature enacted the CARP, authorizing the Louisiana Department of Corrections to adopt an administrative remedy procedure at each of its institutions in compliance with 42 U.S.C. § 1997. See Wright v. Lynn, 618 So.2d 979, 980 (La.App. 1 Cir.1993).
[2] Unfortunately, the procedures authorized by the CARP have deteriorated into perfunctory review by prison officials with no meaningful ramifications. Part of the reason prison officials do not seriously consider prisoner grievances is because so many of them are frivolous, like the one asserted by Mr. Lightfoot. Repeated exposure to frivolous complaints produces a jaded attitude.
[3] In Moore, 567 So.2d at 79, the supreme court noted that the use of the terms "civil" and "criminal" in Article V, § 16(A) of the Louisiana Constitution of 1974 indicated an intent by the drafters to include all matters not criminal in nature as "civil matters" under the district court's original jurisdiction. However, in American Waste, 588 So.2d at 371-373, the supreme court excluded DEQ determinations from the category of "civil matters," thus creating a third, innominate, category of matters not included within the scope of the district courts' constitutional grant of original jurisdiction.