DANIEL IRISH,
v.
NATHAN BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY AT ANGOLA; RICHARD PEABODY, DEPUTY WARDEN; LESLIE DUPONT, DEPUTY WARDEN; SECRETARY OF DEPARTMENT OF CORRECTIONS, CINDY VANNOY, LIEUTENANT; LINDA RAMSAY, SECRETARY'S DESIGNEE; AND JEFFREY E. TRAVIS, SECRETARY'S DESIGNEE.
No. 2009 CA 1738.
Court of Appeals of Louisiana, First Circuit.
March 26, 2010.
Not Designated for Publication.
DANIEL IRISH Angola, LA, In Proper Person, Plaintiff/Appellee.
TERRI L. CANNON, WILLIAM L. KLINE, Baton Rouge, LA Counsel for Defendant/Appellant, James LeBlanc, Secretary Department, of Public Safety and Corrections.
Before: CARTER, C.J., GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
The Louisiana Department of Public Safety and Corrections (DPSC), appeals from a district court judgment reversing the final administrative decision as manifestly erroneous and an abuse of discretion and ordering DPSC to allow the petitioner, Daniel Irish, to receive the publications at issue. For the reasons that follow, we reverse the judgment of the district court.

FACTS AND PROCEDURAL HISTORY
Daniel Irish is an inmate in the custody of DPSC who is housed on death row at the Louisiana State Penitentiary (LSP). On October 2, 2007, Irish filed a grievance in accordance with the Corrections Administrative Remedy Procedure (CARP), La. R.S. 15:1171, et. seq., complaining that the LSP mailroom employees erroneously rejected five books upon grounds that each book contained depictions of nudity and sexually explicit conduct in accordance with Dept. Reg. C-02-009. DPSC responded to Irish's grievance citing to Dept. Reg, C-02-009 and asserting that printed material shall be refused if it interferes with legitimate penological objectives, including, but not limited to, deterrence of crime, rehabilitation of inmates, maintenance of internal/external security of an institution, or maintenance of an environment free of sexual harassment.
Thereafter, Irish filed a petition for judicial review in district court pursuant to La. R.S. 15:1177, seeking declaratory relief and asserting that the five books in question are "artistic," "instructional," and therefore "educational," placing them within the exception to Dept. Reg. C-02-009. Additionally, Irish asserted that DPSC failed to establish how the books in question interfere with a legitimate penological interest.
Following a hearing, wherein the five books were submitted to the court under seal, a commissioner assigned by the district court to review the matter submitted a screening report recommending that the district court reverse the final administrative decision rendered in this matter pursuant to La. R.S. 15:1177(A)(9) as manifestly erroneous and an abuse of discretion. Further, the commissioner recommended that DPSC should be ordered to allow the petitioner to receive the publications at issue. The commissioner made this recommendation after finding that under the Turner v. Safely, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) analysis, the record does not support the finding that the restrictive regulation, which prohibits publications containing depictions of exposed breasts, genitalia, and buttocks, is reasonably related to a legitimate penological interest as applied to this particular death row inmate.
The district court thereafter rendered judgment in conformity with the commissioner's recommendation on May 5, 2009. DPSC now appeals from this judgment.

DISCUSSION
Louisiana Revised Statute 15:1177(A)(9) sets forth the appropriate standard of review by the district court, which functions as an appellate court when reviewing the DPSC's administrative decision through CARP. Specifically, the court may reverse or modify the administrative decision only if substantial rights of the appellant have been prejudiced because the administrative findings are: (1) in violation of constitutional or statutory provisions, (2) in excess of the statutory authority of the agency, (3) made upon unlawful procedure, (4) affected by other error of law, (5) arbitrary, capricious or characterized by an abuse of discretion, or (6) manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. La. R.S. 15:1177(A)(9); Lightfoot v. Stalder, 00-1120, p. 6 (La. App. 1st Cir. 6/22/01), 808 So. 2d 710, 715-716, writ denied, 01-2295 (La. 8/30/02), 823 So. 2d 957.
On review of the district court's judgment on judicial review under La. R.S. 15:1177, no deference is owed by the court of appeal to the factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. McCoy v. Stalder, 99-1747, p. 6 (La. App. 1st Cir. 9/22/00), 770 So. 2d 447, 450-451.
At issue in the instant case is Dept. Reg. C-02-009 regarding inmate mail and publications, promulgated in the Louisiana Administrative Code Title 22, Part, I, Section 313, which provides, in part:
D. Definitions
* * *
Nuditypictorial depiction of buttocks, genitalia or female breasts (with the nipple or areola exposed).
* * *
Sexually Explicit Materialany book, pamphlet, magazine, or printed matter however reproduced, which contains any picture, photograph, drawing or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct, sadomasochistic abuse, bestiality and homosexuality. Explicit sexual material also includes that which contains detailed verbal descriptions or narrative accounts of deviant sexual behavior. (A publication will not be prohibited solely because it contains pictorial nudity that has a medical, educational or anthropological purpose).
Sexually Explicit Featuresthe publication contains depictions of nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual one-time issues. A publication will not be prohibited solely because it contains pictorial nudity that has a medical, educational or anthropological purpose.
E. Policy. It is the secretary's policy that inmates may communicate with persons or organizations subject to the limitations necessary to protect legitimate penological objectives, (including but not limited to deterrence of crime, rehabilitation of inmates, maintenance of internal/external security of an institution, or maintenance of an environment free of sexual harassment), to prevent the commission of a crime, or to protect the interests of crime victims.
* * *
G. Procedures for Publications
* * *
3. Refusal of Publications: Printed material shall only be refused if it interferes with legitimate penological objectives (including but not limited to deterrence of crime, rehabilitation of inmates, maintenance of internal/external security of an institution or maintenance of an environment free of sexual harassment), or if the refusal is necessary to prevent the commission of a crime or to protect the interests of crime victims. This would include but not be limited to the following described categories.
* * *
b. Sexually Explicit Material. It is well established in corrections that sexually explicit material causes operational concerns. It poses a threat to security, good order and discipline of the institution and can facilitate criminal activity. Examples of types of behavior that result from sexually explicit material include nonconsensual sex, sexual molestation of other inmates or staff, masturbation or exposing themselves in front of staff and inappropriate touching or writing to staff or other forms of sexual harassment of staff and/or inmates.
i. Sexually explicit material can portray women (or men) in dehumanizing, demeaning and submissive roles, which, within an institutional setting, can lead to disrespect and the sexual harassment of female (or male) correctional staff. Lack of respect and control in dealing with inmates can endanger the lives and safety of staff and inmates.
ii. The viewing of sexually explicit material undermines the rehabilitation of offenders as it can encourage deviant, criminal sexual behavior. Additionally, once sexually explicit material enters an institution, it is impossible to control who may view it. When viewed by an incarcerated sex offender, it can undermine or interrupt rehabilitation efforts.
iii. Publications that depict nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual one time issues will not be allowed.
In filing his petition for judicial review, Irish asserted that the books at issue were "educational" and therefore, come within the exception to Dept. Reg. C-02-009, and alternatively, that DPSC failed to establish how the books interfere with a legitimate penological interest.
From our review of the record, we find that the books at issue are not "educational" material. These books represent collections of fantasy and pinup artwork, with no specific instructional directions or artistic commentary. Rather, the artwork is presented as a collection for the reader's enjoyment. Accordingly, we do not find that the books at issue in the instant case fall within the exception for material that has a medical, educational, or anthropological purpose.
In analyzing the reasonableness of the prison regulation at issue, we note that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment. But, at the same time, the constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. Turner, 482 U.S. at 84-85, 107 S. Ct. at 2259; Beard v. Banks, 548 U.S. 521, 528, 126 S. Ct. 2572, 2577-2578, 165 L. Ed. 2d 697 (2006). Substantial deference must be accorded to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them. Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003). Turner reconciles these principles by holding that restrictive prison regulations are permissible if they are "reasonably related to legitimate penological interests" and are not an exaggerated response to such objectives. Beard, 548 U.S. at 528, 2572 S. Ct. at 2578.
Turner sets forth four factors relevant in determining the reasonableness of the regulation at issue. First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. Second, whether there are alternative means of exercising the right that remain open to prison inmates. Third, the impact the accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally. Finally, an absence of ready alternatives is evidence of the reasonableness of a prison regulation. Turner, 482 U.S. at 89-90, 107 S. Ct. at 2262.
In its first step response to Irish's grievance, DPSC identified the penological interest as "including but not limited to deterrence of crime, rehabilitation of inmates, maintenance of internal/external security of an institution or maintenance of an environment free of sexual harassment." In its second step response, DPSC also maintained that Dept. Reg. C-02-009 protects the interest of other inmates and staff because accommodation of sexually explicit materials could restrict the liberty and safety of both staff and inmates.
As stated previously, Irish is housed on death row where he is confined to his cell for twenty-three hours per day and his access to other inmates and staff is restricted. However, DPSC maintains that Irish's status as a death row inmate does not differ substantially from that of other inmates with regard to this issue because certain prison personnel and inmates still have access to Irish, including tier walkers, classification officers, security officers, canteen officers, and medics. Additionally, death row inmates are allowed "tier time" so they have the opportunity to distribute materials to other inmates on death row.
DPSC has determined, as expressed in Dept. Reg. C-02-009, that sexually explicit material causes operational concerns and poses a threat to security, good order and discipline of the institution by leading to non-consensual sex, sexual molestation of other inmates or staff, exposing themselves in front of the staff, and inappropriate touching or writing to the staff, or other forms of sexual harassment of staff and/or inmates. Further, such material can lead to disrespect and sexual harassment of correctional staff, and such lack of respect and control in dealing with inmates can endanger the lives and safety of staff and inmates. Finally, once sexually explicit material enters an institution, it is impossible to control who may view it, and it can encourage deviant, criminal sexual behavior.
Accordingly, given the deference afforded to the professional judgment of prison administrators, we find that DPSC has put forth a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.
In determining whether there are alternative means of exercising the right that remain open to prison inmates, the court is to view the right in question "sensibly and expansively." Thornburgh v. Abbott, 490 U.S. 401, 417, 109 S. Ct. 1874, 1884, 104 L. Ed. 2d 459 (1989). Accordingly, in the instant case, the right infringed by DPSC's policy is the right to receive sexually explicit material. As evidenced by the record and Dept. Reg. C-02-009, inmates can receive sexually explicit material if it has a medical, educational, or anthropological purpose. Further, inmates can view such material on the prison television channel. Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation. Turner, 482 U.S. at 90, 107 S. Ct. at 2262. As such, we find this factor is satisfied.
The third factor under the Turner analysis is the impact that accommodation of the asserted constitutional right will have on guards and other inmates. As stated previously, DPSC asserts that accommodating Irish's right in the instant case could lead to disrespect and the sexual harassment of correctional staff. Such lack of respect and control in dealing with inmates can endanger the lives and safety of institutional personnel, visitors, and inmates. Accordingly, from our review of the record, we find that unrestricted possession of sexually explicit material would have a significant negative impact on institutional personnel and other inmates.
Finally, under the fourth Turner factor, if an inmate can point to an alternative that fully accommodates the inmate's rights at de minimus cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard. Turner, 482 U.S. at 91, 107 S. Ct. at 2262. In the instant case, Irish has failed to point to any alternatives that accommodate his rights and therefore, he has not sustained his burden on this element.
Accordingly, from our review of the record and application of the Turner factors to the facts of the instant case, we find that Dept. Reg. C-02-009 is reasonably related to DPSC's legitimate penological interest. Therefore, we find no error or abuse of discretion in DPSC's determination that the five books at issue violate Dept. Reg. C-02-009 and were properly rejected by LSP mailroom employees.

CONCLUSION
For the foregoing reasons, we reverse the judgment of the district court, reversing DPSC's administrative decision and ordering that it allow Irish to receive the publications at issue. We reinstate DPSC's administrative decision, denying Irish's request for relief. All costs of this appeal are assessed against Daniel Irish.
REVERSED AND RENDERED.