WHIPPLE, C.J.
Defendant, the Louisiana Department of Public Safety and Corrections ("the Department"), appeals a judgment of the district court, which reversed an earlier final decision of the Department in an administrative proceeding, wherein inmate Tracy Lee challenged the Department's rejection of four books received by Lee through the prison mailroom on the basis that the books contained sexually explicit material. For the following reasons, we reverse the judgment of the district court.
FACTS AND PROCEDURAL HISTORY
Tracy Lee is an inmate in the custody of the Department who is housed on death row at the Louisiana State Penitentiary ("LSP") located in Angola, Louisiana. Lee filed a grievance in accordance with the Corrections Administrative Remedy Procedure Act, LSA-R.S. 15:1171, et seq. , contending that the LSP erroneously rejected four books[1] mailed to him on the stated basis that the publications contain nudity or sexually explicit material. The Department rejected Lee's grievance, citing *246 Department Regulation C-02-009 as prohibiting sexually explicit material in the interest of the safety of other inmates and staff.
Thereafter, Lee filed a petition for judicial review in the district court pursuant to LSA-R.S. 15:1177, seeking: (1) immediate delivery of the disputed publications; (2) a cease and desist order ordering the Department to cease the taking of any publications from death row inmates on the sole basis that the materials contain sexually explicit material in written form only ; and (3) an order holding the Department and its respective employees in contempt of court for their blatant disregard of prior court rulings that "definitively" decided the disputed issue herein. Lee attached two former commissioner recommendations and the related district court judgments, wherein the district court ordered the Department to release allegedly explicit publications, containing written words only, to death row inmates.[2] In response to Lee's petition, the Department filed a general denial and attached the administrative record and excerpts from the four disputed books that were withheld by the Department.
Upon finding that the issues could be determined by brief in lieu of oral arguments, the commissioner reviewing the matter submitted a screening report to the district court, recommending that the Department's confiscation of publications from Lee should be reversed as arbitrary and in apparent violation of Lee's first amendment rights.
Thereafter, the Department filed a traversal to the commissioner's recommendation, discussing at length how Regulation No. C-02-009, governing the prohibition of sexual explicit material in both pictorial and written form, is reasonably related to legitimate penological interests, including the security of the penitentiary, even when applied to a death row inmate, and arguing that accordingly, any first amendment right that Lee might have to sexually explicit material must fall in light of these legitimate penological objectives. In support thereof, the Department attached a copy of Irish v. Cain, 2009-1738 (La. App. 1st Cir. 3/26/10), 2010 WL 1170355, wherein this court found that Regulation C-02-009 was reasonably related to the Department's legitimate penological interest and thus, the Department's mailroom employees did not abuse their discretion in rejecting five books sent to a death row inmate that contained depictions of nudity and sexually explicit conduct.
However, the district court thereafter rendered judgment in conformity with the commissioner's recommendation, reversing the Department's administrative decision as arbitrary and in violation of Lee's first amendment rights. The Department then filed the instant appeal, assigning the following as error:
(1.) The trial court erred in determining that the Department had no legitimate penological justification to disallow publications containing sexually explicit written words to a death row inmate.
*247 (2.) The trial court erred in finding that the Department's decision was arbitrary and in violation of Lee's first amendment rights.
(3.) The trial court erred in assessing all costs to the Department.
DISCUSSION
Pursuant to the Corrections Administrative Remedy Procedure Act, LSA-R.S. 15:1171, et seq. , review of a decision by the Department made in the course of the Corrections Administrative Remedy Procedure shall be conducted by the court without a jury and shall be confined to the record. The review shall be limited to the issues presented in the petition for review and the administrative remedy request filed at the agency level. Thus, under the statutory framework of the Corrections Administrative Remedy Procedure Act, the opportunity for the parties to present evidence occurs at the administrative level, not at the trial court level, and review by the trial court is limited to the record established at the administrative level, absent alleged irregularities in the procedure. Lightfoot v. Stalder, 2000-1120 (La. App. 1st Cir. 6/22/01), 808 So.2d 710, 715, writ denied, 2001-2295 (La. 8/30/02), 823 So.2d 957 ; LSA-R.S. 15:1177(A)(5).
The standard for judicial review by the district court is set forth, in pertinent part, in LSA-R.S. 15:1177(A)(9), which provides:
The court may reverse or modify the decision only if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(a) In violation of constitutional or statutory provisions.
(b) In excess of the statutory authority of the agency.
(c) Made upon unlawful procedure.
(d) Affected by other error of law.
(e) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
(f) Manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
On review of the district court's judgment rendered on judicial review under LSA-R.S. 15:1177, no deference is owed by the court of appeal to the factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. McCoy v. Stalder, 99-1747 (La. App. 1st Cir. 9/22/00), 770 So.2d 447, 450-451.
Thus, the issue before us is whether, under the facts of this case, the Department's enforcement of Regulation C-02-009 infringes on Lee's first amendment rights. When a prison regulation allegedly impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89-90, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). "[S]uch a standard is necessary if 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.' Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." [Citation omitted.] Turner, 482 U.S. at 89, 107 S.Ct. at 2261-62.
*248 Regulation C-02-009, effective March 20, 2012, regarding inmate mail and publications, promulgated in the Louisiana Administrative Code Title 22, Part, I, Section 313, provides, in pertinent part:
E. Definitions
* * *
Sexually Explicit Material -any book, pamphlet, magazine, or printed matter however reproduced, which contains any picture, photograph, drawing or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct, sadomasochistic abuse, bestiality and homosexuality. Explicit sexual material also includes that which contains detailed verbal descriptions or narrative accounts of sexually explicit conduct. (A publication will not be prohibited solely because it contains pictorial nudity that has a medical, educational or anthropological purpose.)
* * *
G. Procedures for Publications
* * *
3. Refusal of Publications. Printed material shall only be refused if it interferes with legitimate penological objectives (including but not limited to deterrence of crime, rehabilitation of offenders, maintenance of internal/external security of an institution or maintenance of an environment free of sexual harassment), or if the refusal is necessary to prevent the commission of a crime or to protect the interests of crime victims. This would include but not be limited to the following described categories:
* * *
b) sexually explicit material:
i. it is well established in corrections that sexually explicit material causes operational concerns. It poses a threat to the security, good order and discipline of the institution and can facilitate criminal activity. Examples of the types of behavior that result from sexually explicit material include nonconsensual sex, sexual molestation of other offenders or staff, masturbation or exposing themselves in front of staff and inappropriate touching or writing to staff or other forms of sexual harassment of staff and/or offenders;
ii. sexually explicit material can portray women (or men) in dehumanizing, demeaning and submissive roles, which, within an institutional setting, can lead to disrespect and the sexual harassment of female (or male) correctional staff. Lack of respect
and control in dealing with offenders can endanger the lives and safety of staff and offenders;
iii. the viewing of sexually explicit material undermines the rehabilitation of offenders as it can encourage deviant, criminal sexual behavior. Additionally, once sexually explicit material enters an institution, it is impossible to control who may view it. When viewed by an incarcerated sex offender, it can undermine or interrupt rehabilitation efforts;
iv. publications that depict nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual one time issues will not be allowed.
[Emphasis added.]
The Supreme Court in Turner set forth four factors to consider in determining the reasonableness of a prison regulation. First, there must be a "valid, rational connection"
*249 between the prison regulation and the legitimate governmental interest put forward to justify it. Turner, 482 U.S. at 89, 107 S.Ct. at 2262. As explained by the court in Turner, "a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." Turner, 482 U.S. at 89-90, 107 S.Ct. at 2262. The second factor is whether there are alternative means of exercising the right that remain open to prison inmates. Turner, 482 U.S, at 90, 107 S.Ct. at 2262. The third factor is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and the allocation of prison resources generally in the prison environment. Turner, 482 U.S. at 90, 107 S.Ct. at 2262. Under the fourth Turner factor, if an inmate can point to an alternative that fully accommodates the inmate's rights at de minimus cost to valid penological interests, a court may consider this as evidence that the regulation does not satisfy the reasonable relationship standard. Turner, 482 U.S. at 90-91, 107 S.Ct. at 2262.
Citing Irish v. Cain, 2010 WL 1170355, the Department contends herein that this court has previously addressed and upheld the Department's withholding of sexually explicit material from death row inmates pursuant to Regulation C-02-009. Lee counters that Irish v. Cain is distinguishable because it involved sexually explicit pictures, whereas the instant case involves written materials only. Nevertheless, while Irish v. Cain may be distinguishable, the recent case of Taylor v. LeBlanc, 2013-0979 (La. App. 1st Cir. 2/10/14), 2014 WL 539104, writ denied, 2014-0707 (La. 1/23/15), 159 So.3d 455, which neither party has cited, presents almost identical facts and arguments.
In Taylor, an argument similar to that advanced by Lee was made by another inmate housed on death row at the LSP after the Department withheld two books from the inmate pursuant to Department Regulation C-02-009 because the written material was deemed to be sexually explicit. Taylor, 2014 WL 539104 at *3. In support of the Regulation and the withholding of the books, the Department in Taylor raised identical arguments to those advanced by the Department in the instant case. This court agreed with the Department, concluding that the Department's decision to withhold the books from the inmate was neither arbitrary, capricious, nor manifestly erroneous, nor was it in violation of the inmate's constitutional rights. Taylor, 2014 WL 539104 at *5.
In regard to the Turner factors, in Taylor, and in the instant case, the Department contended that Regulation C-02-009 satisfies the first Turner factor because the Regulation has legitimate penological objectives, including maintaining order, deterrence of crime, maintaining internal/external security of an institution, maintaining an environment free of sexual harassment, and providing the opportunity for rehabilitation of inmates. This court agreed, stating that "given the deference afforded to the professional judgment of prison administrators, we find that the Department has put forth a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." Taylor, 2014 WL 539104 at *4. In regard to the second Turner factor, this court found that despite the regulation, prison inmates have alternative means of exercising their First Amendment rights, as the regulation does not preclude the inmate from having access to all reading materials and moreover, the Regulation provides that inmates can receive sexually explicit material if it has a medical, education, or anthropological purpose. Taylor, 2014 WL 539104 at *4. In regard to the third Turner factor, this *250 court agreed with the Department's argument that the introduction of sexually explicit material into the prison population would have a "ripple effect," as there would be an inability to control who viewed the material, and thus accommodation of the inmate's asserted constitutional right would have a significant impact on guards, other inmates, and prison resources. Taylor, 2014 WL 539104 at *4. Accordingly, inasmuch as the facts and arguments in the instant case are substantially similar to those in Taylor, we see no reason to deviate from this court's prior conclusion with regard to the first, second, and third Turner factors as applied to prison Regulation C-02-009 and the withholding of written sexually explicit material from death row inmates.
As to the fourth Turner factor, the court in Taylor commented that the inmate did not identify any alternatives at a de minimis cost to the Department's penological interest that would accommodate his first amendment rights. Taylor, 2014 WL 539104 at *5. Here, Lee argues that a de minimis alternative does exist. Specifically, Lee contends that the Department could simply exclude death row inmates from the application of Regulation C-02-009 because there is no penological interest in rehabilitating death row inmates and moreover, the Department's alleged security concerns for death row inmates, if allowed access to sexually explicit written material, is "exaggerated." We disagree.
We find no basis or support for Lee's proposed alternative as, in sum, his proposed alternative would effectively allow those convicted of the most egregious crimes and sentenced to death to have access to sexually explicit material, while denying the rest of the prison population access to such materials, thereby favoring and rewarding the worst of the offenders amongst the prison population. Moreover, we find that the Department has a legitimate interest in rehabilitating prisoners not only for their potential return to society, but also as it pertains to their behavior while incarcerated. Thus, we are unable to say that there is no penological interest in rehabilitating death row inmates.
Additionally, the Department has discussed in detail the "ripple effect" on fellow inmates if death row inmates were permitted access to sexually explicit material without providing access to other inmates, including the likely transmission of such material beyond death row and the possibility that if lockdown inmates were permitted access to such material, such access could induce other inmates to engage in behaviors that may land them in extended lockdown areas. Accordingly, while Lee has proposed an alternative, it is not a rational alternative. Thus, we reject his claim that Regulation C-02-009 fails to satisfy "the reasonable relationship standard." See Turner, 482 U.S. at 90-91, 107 S.Ct. at 2262.
Lee also cites LSA-R.S. 15:1177(A)(9)(e), which provides that the district court may reverse a decision of the Department that is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Lee contends that the Department has arbitrarily denied him access to the four disputed books at issue herein, when he has access to many other books that contain sexually written content, including the Bible. First, we note that Lee does not allege that other inmates have been allowed to receive the four books at issue herein that were withheld by the Department. See Taylor, 2014 WL 539104 at *5. While Lee has inserted in his brief excerpts from other books that are alleged to be sexually explicit, but still available to prisoners, these books and/or excerpts are not included in the record of this proceeding *251 and present nothing for review. However, the record does contain twenty-plus pages from the four books at issue herein, which are replete with detailed verbal descriptions and narratives of nudity and sexual conduct. Based on the record before us, we are unable to conclude that the Department has acted arbitrarily in withholding these four books from Lee, while allowing him access to other books that purportedly contain equivalent sexually explicit material.
Lee further contends that the language of Regulation C-02-009 itself is so vague that it requires arbitrary enforcement, citing language from a district court commissioner's report.[3] However, the regulation at issue herein does not simply state that "sexually explicit material" is prohibited; rather, the regulation attempts to define sexually explicit material. Thus, while defining what is, or is not, sexually explicit material may be difficult, it does not follow that any regulation of such material must be struck down as ambiguous and arbitrarily enforced.
Accordingly, considering our recent decision in Taylor, 2014 WL 539104, which upheld the regulation at issue herein against identical arguments of unconstitutionality, we perceive no reason to deviate from our prior ruling and likewise find that in applying the Turner factors to the facts of this case, Regulation C-02-009 is reasonably related to a legitimate penological interest. Likewise, from our review of the record, including excerpts from the disputed books, we are unable to say that the Department was arbitrary and capricious in finding that these books constitute "sexually explicit material" for purposes of Regulation C-02-009. Therefore, we find no error or abuse of discretion in the Department's determination that the four books at issue violate Regulation C-02-009. Thus, we agree with the Department that the books at issue were properly rejected by the LSP mailroom employees.
CONCLUSION
For the foregoing reasons, we reverse the April 17, 2017 judgment of the district court. We reinstate the Department's administrative decision, denying Mr. Lee's request for relief. All costs of this appeal are assessed against appellee, Tracy Lee.
REVERSED AND RENDERED.

The four books at issue, namely Bared to You; Captivated by You; Entwined with You; and Reflected in You , were all authored by Sylvia Day.

The judgments cited by Lee were rendered in George Brooks v. Cathy Roberts, et al, No. 510,030 (La. 19th Judicial District Court, 8/26/04), where the Commissioner therein relied on a similar lawsuit filed by the same inmate in federal court, Brooks v. Stalder, 98-396 (M.D. LA. 3/29/99), which found that there was no legitimate penological justification in disallowing the death row inmate access to the disputed publications because there was penological no interest in the rehabilitation of a death row inmate and security was not fostered by the restriction as death row inmates have no interaction with other inmates, and Hoffmann v. Stalder, et al, No. 555,610 (La. 19th Judicial District Court, 6/2/08).

See George Brooks v. Cathy Roberts, et al, No. 510,030 (La. 19th Judicial District Court, 8/26/04).